# EXHIBIT A

STATE OF MICHIGAN                    26-00795-GZ

IN THE 52nd DISTRICT COURT FOR THE COUNTY OF OAKLAND

CAROL BETH LITKOUHI,

      Plaintiff,

                              Case No.:   26-                    -GZ

      v.

                              Hon.

ROCHESTER COMMUNITY SCHOOLS DISTRICT,
a government entity, MICHELLE BUELTEL, an individual
in her official capacity as a School Board Member, JESSICA GUPTA,
an individual in her official capacity as a School Board Member,
JULIE ALSPACH, an individual in her official
capacity as a School Board Member, JAYSON BLAKE, an individual
in his official capacity as a School Board Member, and BARB ANNESS,
an individual in her official capacity as a School Board Member,

      Defendants.

---

MACKINAC CENTER LEGAL FOUNDATION
Derk A. Wilcox (P66177)
Patrick J. Wright (P54052)
140 West Main Street
Midland, MI  48640
(989) 631-0900
wilcox@mackinac.org
      *Attorneys for Plaintiff*

---

## VERIFIED COMPLAINT

### INTRODUCTION

      The plaintiff, Carol Beth Litkouhi, is a member of the Board of Education of the
defendant Rochester Community Schools District.  The remaining defendants are also board
members.

      On November 10, 2025, the Board of Education voted to censure the Plaintiff and remove
her from "all committees and liaison roles" ostensibly because "Trustee Litkouhi recently
authored and published an opinion piece in The Detroit News that referenced confidential
information shared by the Superintendent that had not been approved for release, presenting it

FILED IN 52-3 DISTRICT COURT; 2/4/2026 3:39 PM

publicly in a manner that was incomplete, misleading, and harmful to the reputation of the District and its leadership; and potentially fiscally harmful to the District and other Oakland County school districts."

At the time of the censure vote, the Board did not identify any confidential information that was revealed by Plaintiff. Rather, they relied on a recent, unconstitutional revision to their bylaws that forbids trustees to discuss information with the public, "***not limited to*** confidential or privileged information." (Emphasis added.)

As set forth below, censure pursuant to a violation of an unconstitutional bylaw cannot stand. Further, the censure was in retaliation for Plaintiff exercising her First Amendment rights.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Carol Beth Litkouhi is a natural person and an elected member of the school board governing defendant Rochester Community School District. She is a resident of Rochester Hills, Oakland County, in the State of Michigan.

2. Defendant Rochester Community School District (District) is a government entity administered by the Board of Education and a Superintendent. Defendant is headquartered at 52585 Dequindre Road, Rochester, Oakland County, Michigan 48307.

3. Defendant District is a general powers school district within the meaning of the Michigan Revised School Code, MCL 380.1, *et seq*.

4. Defendant Michelle Bueltel is a natural person and an elected member of the school board governing defendant District. Upon information and belief, she is a resident of Oakland County in the State of Michigan. She is a defendant in her official capacity only.

5. Defendant Jessica Gupta is a natural person and an elected member of the school board governing defendant District. Upon information and belief, she is a resident of Oakland County in the State of Michigan. She is a defendant in her official capacity only.

6. Defendant Julie Alspach is a natural person and an elected member of the school board governing defendant District.  Upon information and belief, she is a resident of Oakland County in the State of Michigan.  She is a defendant in her official capacity only.

7. Defendant Jayson Blake is a natural person and an elected member of the school board governing defendant District.  Upon information and belief, he is a resident of Oakland County in the State of Michigan.  He is a defendant in his official capacity only.

8. Defendant Barb Anness is a natural person and an elected member of the school board governing defendant District.  Upon information and belief, she is a resident of Oakland County in the State of Michigan.  She is a defendant in her official capacity only.

9. The actions at issue here took place in Rochester, Oakland County, and the venue is appropriate in this court.

10. This District Court has jurisdiction pursuant to MCL 600.6511 and MCL 600.8301.

11. This Complaint contains a civil rights action under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.  This court has jurisdiction over these federal claims.

**FACTS**

12. The Plaintiff incorporates the preceding paragraphs as if fully restated herein.

13. Upon information and belief, a new bylaw was adopted on May 6, 2024.  This bylaw requires, as part of Bylaw 1001—a "Code of Ethics"—that board members "will not share any document or information that has not already been shared by the District, including *but not limited to* confidential or privileged information."  (Emphasis added.) See Exhibit A.

14. On or about October 8, 2025, the District superintendent (who is not a party to this lawsuit) invited Plaintiff to attend a meeting at which he briefed Plaintiff and another board member on a proposed 2026 county-wide enhancement millage that would increase taxes.

15. At the said briefing, the superintendent asked Plaintiff and the other board member not to publicly discuss the millage plan.

16. At said meeting, the superintendent provided Plaintiff with an informational packet entitled "Enhancement Millage:  August 4, 2026."  Exhibit B.

17. The Enhancement Millage package contained information on how to improve the chances that the public would favor passage of the millage, citing a study from other parts of the state and how millages were supported or opposed by voters based on information they were given.  Exhibit B, supra, at *3 and *6.

18. Despite the superintendent asking Plaintiff to keep the proposed millage confidential, the Enhancement Millage package states, "we believe in empowering the community to make informed decisions."  Exhibit B, supra, at *6.

19. At the said briefing, Plaintiff informed the superintendent that she planned to discuss the matter with the public.

20. A superintendent's request for non-disclosure does not make such communication a confidential or privileged matter under Michigan law.

21. On October 30, 2025, Plaintiff published an opinion article in The Detroit News that discussed the proposed tax increase and the superintendent's request that school district preparation for the millage be kept confidential.  See Exhibit C.

22. In response to this article, a resolution to censure Plaintiff was introduced at a school board meeting and voted on November 10, 2025.  See Exhibit D.

23. All board members named as defendants here voted for this censure of Plaintiff.

24. The censure cited as its reason that Plaintiff had violated Bylaw 1001 by "the unauthorized disclosure and misrepresentation of confidential District information." Exhibits D, supra.

25. The censure stated that "effective immediately trustee[1] Carol Beth Litkouhi is removed, without future assignments for one calendar year, from all committees and liaison roles;…"  Exhibit D, supra.

26. At the November 10, 2025, meeting, during the discussion of the censure, there was no identification of what "confidential District information" or "misrepresentation" had been divulged by Plaintiff in the Detroit News article or elsewhere.

27. At least one other district in Oakland County, Oxford, openly discussed the proposed millage.[2]

28. The proposed millage could not, therefore, be considered a secret, as the public already knew.

29. The proposed millage and the materials surrounding it are not documents that, per Michigan law, can be withheld from the public under the guise of privilege or confidentiality.

---

[1] The censure uses the term "trustee" although that term is not used in the Bylaws, wherein they are called school "board members."

[2] A video Oxford posted to YouTube shows the Oxford school board openly discussing the proposed millage on October 7, 2025, starting around the 48:11 minute mark.  The Oxford School Board openly solicited the public's comments:  https://youtu.be/PSFbYNHJ7FI?t=2891

## COUNT 1

### BYLAW 1001 VIOLATES PLAINTIFF'S FREE SPEECH RIGHTS

30. Plaintiff hereby incorporates the preceding paragraphs as though fully restated herein.

31. The Michigan Constitution, *inter alia*, states that: "[N]o law shall be enacted to restrain or abridge the liberty of speech ..."  Const 1963, art 1, section 5.

32. The First Amendment of United States' Constitution, made applicable to the states by the Fourteenth Amendment, states: "Congress shall make no law … abridging the freedom of speech … or the right of the people … to petition the Government for a redress of grievances."

33. Bylaw 1001 here states that board members "will not share any … information that has not already been shared by the District, including but not limited to confidential or privileged information."  Exhibit A, supra.

34. Prohibiting board members from sharing nonprivileged or nonconfidential information is a restraint of a board member's free speech under both the Michigan and United States constitutions.

35. Rules and bylaws of the state's political subdivisions have the force of laws and regulations and are held to the same standards.

36. Because Bylaw 1001 violates the Michigan and United States Constitutions, it is void *ab initio*.

37. Because Bylaw 1001 is void *ab initio*, any actions taken to enforce its unconstitutional provisions are void, including this censure.

## COUNT 2

### BYLAW 1001 IS UNCONSTITUTIONALLY OVERBROAD AND VAGUE

38. Plaintiff hereby incorporates the preceding paragraphs as though fully restated herein.

39. Because Bylaw 1001 prohibits the sharing of "information that has not already been shared by the District," Plaintiff and other board members are not on notice of what conduct is prohibited.

40. Bylaw 1001 effectively silences board members from sharing with the public and their constituents anything that hasn't been preapproved by the District.  This is overly broad and vague.

41. The universe of topics and information "that has not already been shared by the District" is nearly infinite.

42. Bylaw 1001 does not provide fair notice of the type of conduct prohibited.

43. Bylaw 1001 encourages subjective and discriminatory application by delegating to those empowered to enforce the Bylaw the unfettered discretion to determine whether the Bylaw has been violated.

44. Because Bylaw 1001 is unconstitutionally overbroad and vague, it is void *ab initio*, and therefore any enforcement actions taken pursuant to it are void.

## COUNT 3

## BYLAW 1001 EXCEEDS THE POWERS GRANTED TO

## SCHOOL BOARDS BY STATUTE

45. The Plaintiff hereby incorporates the preceding paragraphs as though fully restated herein.

46. Michigan's school districts are governed by Act 451 of 1976, the Revised School Code, MCL 380.1 *et seq*.

47. The Revised School Code limits school districts to certain powers expressed or implied.

Per MCL 380.11a:

> (3) A general powers school district has all of the rights, powers, and duties expressly stated in this act; may exercise a power implied or incident to a power expressly stated in this act; and, except as otherwise provided by law, may exercise a power incidental or appropriate to the performance of a function related to operation of a public school and the provision of public education services in the interests of public elementary and secondary education in the school district, including, but not limited to, all of the following:
>
> (a) Educating pupils. In addition to educating pupils in grades K-12, this function may include operation of preschool, lifelong education, adult education, community education, training, enrichment, and recreation programs for other persons. A school district may do either or both of the following:
>
> (i) Educate pupils by directly operating 1 or more public schools on its own.
>
> (ii) Cause public education services to be provided for pupils of the school district through an agreement, contract, or other cooperative agreement with another public entity, including, but not limited to, another school district or an intermediate school district.
>
> (b) Providing for the safety and welfare of pupils while at school or a school sponsored activity or while en route to or from school or a school sponsored activity.
>
> (c) Except as otherwise provided in this section, acquiring, constructing, maintaining, repairing, renovating, disposing of, or conveying school property, facilities, equipment, technology, or furnishings.
>
> (d) Hiring, contracting for, scheduling, supervising, or terminating employees, independent contractors, and others, including, but not limited to, another school district or an intermediate school district, to carry out school district powers. A school district may indemnify its employees.
>
> (e) Receiving, accounting for, investing, or expending public school money; borrowing money and pledging public school funds for repayment; and qualifying for state school aid and other public or private money from local, regional, state, or federal sources.

48. The power to declare information confidential or privileged is not an express power of school districts.

49. The power to declare information confidential or privileged is not an implied power of school districts and is not akin to any of the enumerated powers.

50. What is considered by the state to be confidential or privileged information of local government entities can be found in other state statutes, such as FOIA, and not in the powers of school districts.

51. The powers of a school board are defined by the revised School Code.  MCL 380.11a(6) states that: "The board of a general powers school district shall adopt bylaws. These bylaws may establish or change board procedures, the number of board officers, titles and duties of board officers, and any other matter related to effective and efficient functioning of the board."

52. Declaring information about a proposed millage confidential and un-shareable is not a power that can be found in MCL 380.11a(6).  It is not necessary to the efficient and effective functioning of the board.

53. A school board cannot silence board members so as to keep them from publicly disagreeing with the rest of the board.

54. A school board cannot define a duty of board officers in such a way that it contradicts the laws of this state.

55. Because a school district has no statutory authority to restrict the speech of its board members, any bylaw that does this is void *ab initio*.

## COUNT 4

## BYLAW 1001 IS VOID BECAUSE

## IT CONTRADICTS THE PUBLIC POLICY OF THE STATE

56. Plaintiff incorporates the preceding paragraphs as though fully restated herein.

57. Michigan has decreed through its Constitution, statutes, and court opinions that it is the public policy of this state that public officials must be open and accountable to the citizens of this state and owe them a duty of transparency.

58. Public officials, like the Plaintiff and Defendants, cannot withhold information from the public except in a limited number of circumstances set forth in the statutes.

59. Information about the subject proposed millage is not one of those statutory exceptions.

60. The Michigan Constitution states that citizens of the state have a right to know about public finances and records: "All financial records, accountings, audit reports and other reports of public moneys shall be public records and open to inspection." Const. 1963, art. 9, § 23.

61. A proposed tax millage is information related to public finances and is the kind of thing the public has a right to know about and cannot be kept secret.

62. The Michigan Freedom of Information Act (FOIA) states:

> It is the public policy of this state that all persons … are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act. The people shall be informed so that they may fully participate in the democratic process.

MCL 15.231(2).

63. Bylaw 1001 violates this public policy where it prevents school board members from informing people so that they may fully participate in the democratic process.

64. By statute, FOIA provides that certain materials are exempt from disclosure.  MCL 15.243.

65. Materials and information related to proposed millages are not exempt from disclosure in MCL 15.243.

66. If a member of the public had submitted a FOIA request to Defendant Rochester Community School District asking for information and materials related to this proposed millage increase, the District would have been required to provide it to the FOIA requestor.

67. Since the information at issue here related to the proposed millage cannot be withheld pursuant to FOIA, it cannot be said to be privileged or confidential.

68. Michigan's Open Meetings Act, MCL 15.261 *et seq*., requires that public bodies, such as the school board here, make decisions in open meetings so that the public can participate.

69. The Open Meetings Act contains broad language to ensure that the public knows of the activities of its elected officials and can participate and provide feedback.

70. The Open Meetings Act states, *inter alia*:

> All meetings of a public body must be open to the public and must be held in a place available to the general public. All persons must be permitted to attend any meeting except as otherwise provided in this act. The right of a person to attend a meeting of a public body includes the right to tape-record, to videotape, to broadcast live on radio, and to telecast live on television the proceedings of a public body at a public meeting. The exercise of this right does not depend on the prior approval of the public body.

MCL 15.263(1).

71. The Open Meetings Act further states that: "All decisions of a public body must be made at a meeting open to the public." MCL 15.263(2).

72. Withholding information regarding a proposed tax millage increase is not a matter that can be kept behind closed doors until the board can decide how to promote the tax increase.

73. The Open Meetings Act provides for a limited number of activities that can be done in a closed meeting away from the public.  MCL 15.268.

74. None of the MCL 15.268 exceptions apply to deciding the best way to promote a millage increase.

75. The Management and Budget Act, MCL 18.1101 *et seq*., provides comprehensive authority to the Department of Technology Management and Budget (DTMB) to define public documents and records.

76. DTMB has authority to set schedules for the retention of documents and records for local political subdivisions.  MCL 18.1285.  This applies to the District.

77. Pursuant to DTMB schedule GS2, item number 0205, Superintendents and Boards of Education must keep records of "Millage Files." "These records document millage proposals.  They may include, but may not be limited to, presentations, research, budgetary documents, ballot language, attorney opinions, and board resolutions."  See Exhibit E.

78. The language of GS2-0205 above would include the document and other information referenced in Exhibit B.

79. There is no indication in Schedule GS2-0205 that such records as Exhibit B are or could be confidential, privileged, or exempt from FOIA.

80. Michigan has long held that contracts contravening public policy are void and unenforceable.  And that "Public policy can be found 'in our state and federal constitutions, our statutes, and the common law,' among other sources."  *People v Smith*, 502 Mich 624, 632-33 (2018).

81. Our Constitution, statutes, and common law all favor the public's right to know and public officials' right and requirement to speak freely and openly with constituents.

82. Agreements procuring a candidate's agreement to withdraw from seeking public office are void as against public policy. *Id*. at 640. This is because "Schemes that affect the 'selection and eligibility of candidates ... inevitably affect[ ]—at least to some degree— the individual's right to vote and his right to associate with others for political ends.'" *Id*. at 637.

83. Analogous to the holding in *Smith*, *supra*, an agreement by a public board to prevent a board member from speaking and associating with the public about non-confidential information that is open to the public under our laws is a contravention of public policy.

84. Bylaw 1001, therefore, violates public policy and is void *ab initio*.

## COUNT 5

## FIRST AMENDMENT RETALIATION

85. Plaintiff hereby incorporates the preceding paragraphs as though fully restated herein.

86. Plaintiff exercised her First Amendment free speech rights to inform the public of the plans of their government.  Such conduct is protected by the First Amendment.

87. Plaintiff was censured by board member Defendants, and this was an adverse action taken against her that would deter a person of ordinary firmness from continuing to engage in the conduct.

88. There is a causal connection in that the adverse action was motivated, at least in part, by the Plaintiff's protected conduct.

89. While the United States Supreme Court has held that censure of a public official by itself is not enough to be considered an adverse action, it has left unanswered the question of whether a censure accompanied by other penalties such as the removal of committee

assignments rises to the level of being an adverse action.  See *Houston Community College System v Wilson*, 595 US __ (2022).

## REQUEST FOR RELIEF

For the reasons stated above, Plaintiff requests that this court provide her relief in the form of a declaratory judgment, injunction, mandamus, or other order holding that Bylaw 1001 is void *ab initio* where it silences Plaintiff and other board members from discussing non-privileged and non-confidential information.  Further, hold that the censure made pursuant to Bylaw 1001 is void, enjoin any enforcement of the censure, and that Plaintiff should be returned to committees and liaison roles.

In addition, Plaintiff requests that this court find that the censure was an adverse action that was done in retaliation for her exercising her First Amendment rights and enjoin Defendants from any further retaliation; Award Plaintiff her attorneys' fees under 42 U.S.C. § 1988 along with interest, costs, and nominal damages; And award any declaratory, equitable, and/or injunctive relief this Court determines to be just and equitable to remedy Defendants' improper infringement of Plaintiff's First Amendment Rights.

Dated: February 4, 2026                    By: *Carol Beth Litkouhi*
                                            Carol Beth Litkouhi
                                            Plaintiff

**VERIFICATION**

———————————————

I declare that the allegations pleaded in this complaint are true to the best of my information, knowledge, and belief.

Executed this 4th day of ~~January~~ February ___, 2026

*Carol Beth Litkouhi*

State of Michigan                    )
County of Oakland                    )

     Subscribed to and sworn to (affirmed) before me this 4th day of ~~January~~ February, 2026, by Carol Beth Litkouhi who is personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me.



Deanna J Harless
Notary Public State of Michigan
Oakland County
My Commission Expires  2/16/2031
Acting in the County of  Oakland

Notary Public *Deanna J. Harless*
State of Michigan, County of Oakland
My commission expires  2-16-2031
Acting in County of Oakland

Page 15 of 15

EXHIBIT A



# BOARD OF EDUCATION
# BYLAWS AND POLICIES



## Miller Johnson School Policy Services

This collection of bylaws and policies is copyrighted to Miller, Johnson, Snell & Cummiskey, PLC.
It is intended for the sole and exclusive use of Miller Johnson and the Rochester Community
Schools.  No portion of the document may otherwise be reproduced, copied, distributed, or sold, in
any form, without the prior written permission of Miller Johnson.

**Adopted on May 6, 2024**

EXHIBIT A



EXHIBIT A

## 1000                                    BYLAWS

The Board has adopted these Bylaws to define the manner in which the Board meets, operates, and conducts its business.  Bylaws are intended to provide for the Board's own internal governance, providing the basic framework for Board operations.

## 1001          Organization and Functioning of the Board

**Composition**   The Board of Education is comprised of seven (7) members, elected or appointed in accordance with the Revised School Code and the Michigan Election Law.

**Term of Office**   The term of office of each member is six (6) years.

**Oath of Office**   Newly elected, reelected, and appointed members of the Board will take the required oath of office before being seated.

**Vacancies**   In the event of a vacancy on the Board, the Board may appoint an eligible person to fill the position consistent with Michigan law.

**Duties and Responsibilities of Board Members**   Board members are elected to serve the interests of the School District and the entire school community.  These interests may not be subordinated to any partisan principle, group, or interest.  Board members are expected to be and remain informed about issues that may come before the Board for decision.  Regular attendance at Board meetings is necessary to fulfill the obligations of a Board member.

**Role of Individual Board Members**   The Board acts as a whole, and only at properly convened Board meetings.  An individual Board member lacks independent authority and may not act for or on behalf of the Board unless they have been specifically delegated authority by the Board to act in a particular instance.

**Code of Ethics**   Each Board member will be asked to acknowledge and sign the following Code of Ethics:

As a member of the Board, I will promote the best interest of the School District as a whole and will adhere to the following ethical standards and principles:

1.   I will represent all School District constituents honestly and equally and refuse to surrender my responsibilities to any partisan principle, group, or interest.

2.   I will avoid any conflict of interest prohibited by law or appearance of such that could result from my position, and will not use my membership on the Board for personal gain, where contrary to the interests of the School District.

3.   I will recognize that a Board member has no legal authority as an individual and that decisions can be made only by a majority vote at a public meeting of the Board.

4.   I will take no private action that might compromise the Board or administration and will not share any document or information that has not already been shared by the District, including but not limited to confidential or privileged information.

5.   I will abide by majority decisions of the Board, while retaining the right to seek changes in such decisions through ethical and constructive channels.

EXHIBIT A

# Enhancement Millage

## August 4, 2026

EXHIBIT B

# What is a regional enhancement millage?

- Since 1994 (Proposal A), the state controls school funding

- One Exception: Regional Enhancement Millage

- Constituent School Districts can request an Enhancement Millage Proposal be put before voters

  - must be proposed on a county-wide basis

  - passes or fails on a county-wide basis, not by local communities

- If approved, the money is collected by the ISD and distributed equally to all public school districts and public school academies on a **per student basis.**

- Each district has **local control** over how the money is spent.

EXHIBIT B

EXHIBIT B

# Counties w/Enhancement Millage

- **Wayne County** – 1.9812 mils – approx $360 per student
  - 2016-2022 — First Millage
  - Nov 2020 Ballot — Voters Renew Millage
  - 2022-2028 — Voters Renew Millage
  - 2028-2034 — Current Millage
- **Macomb County** – 1.8305 mils – approx $400 per student
  - March 2020 — 10 years
- **Charlevoix-Emmet County** – 0.953 mil
- **Kalamazoo County** – 1.4968 mils
- **Kent County** – 0.8578 mils
- **Midland County** – 1.5 mils
- **Monroe County** – 0.9866 mil
- **Muskegon County** – 0.9749 mil
- **Ottawa County** – 0.8616 mil



EXHIBIT B

EXHIBIT B

# The Proposal

- August 4, 2026

- 1.5 mils to be levied over 6 years

- Would generate approximately $700 per pupil annually for a 6 years period for each Oakland County public student

- Proposal would cost approximately $150 per year on a home valued at $200,000.

- If successful, the millage starts in the summer of 2025



EXHIBIT B

EXHIBIT B

# Timeline

- Local Resolutions:
    - Must be adopted within a 180-day period and transmitted to Oakland Schools
    - Majority of combined membership requirement should be satisfied after October 3, 2025 but before March 31, 2026
- Oakland Schools Board of Education adopts resolution certifying the text of the ballot proposal to the Oakland County Clerk (the "School District Election Coordinator").
- Oakland Schools certifies text of ballot proposal to the School District Election Coordinator, with copies to the local clerks and other affected county clerks, immediately after adopting the resolution described above.
- Election Date: Tuesday, August 4, 2026



EXHIBIT B

EXHIBIT B

# Case Study

- **Enhancement Millages: Successes, Challenges, Planning for the Future presentation** from Michigan School Board Association
  - Kent ISD, East Grand Rapids Public Schools, Rockford Public Schools

EXHIBIT B

# How will this impact Oakland County?

- Would generate approximately $4,392 per pupil over 6 years for Oakland County public students
- Proposal would cost approximately $150 per year on a home valued at $200,000.
- If successful, the millage starts in the summer of 2025

|  | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Year 6 |
|---|---|---|---|---|---|---|
| Per pupil | $682.44 | $701.55 | $721.19 | $741.39 | $762.15 | $783.49 |
| estimated 5,000 students | $3.4M | $3.5M | $3.6M | $3.7M | $3.8M | $3.9M |

EXHIBIT B

EXHIBIT B

# How will this impact Our District?



**STUDENTS**
- Reduce Class Sizes
- Enhance Student Wellness
- Improve Safety & Security

**TEACHERS**
- Increase Teacher Salaries
- Retain Substitute Teachers
- Attract Additional Talented Teachers & Staff
- Provide Additional Professional Development

**DISTRICT**
- Enhance District-Wide Programming
- Stabilize District Budget with General Funds



for **6** years

EXHIBIT B

# Cost Outpacing Funding



EXHIBIT B

# Increased Need for Students

- Greater social emotional support needed after Distance Learning periods
- Greater medical needs
- Rising overall costs for goods & services

**170,603 Students in Oakland County**

- 62,828 Economically Disadvantaged
- 14,359 English is a second language
- 22,026 Students with disabilities



EXHIBIT B

EXHIBIT B

# Ballot Initiative

- The Board's resolution is not an endorsement of the millage itself.

- We believe in empowering the community to make informed decisions.

  - Allowing voters to decide ensures democratic participation and transparency.



EXHIBIT B

# Epic MRA Survey – Oakland County

EXHIBIT B

"Info" Vote Results – A Test After Reciting Potential Local District Uses for Added Revenue Q. 18



EXHIBIT B

# Comparison of "Cold" and "Info"

EXHIBIT B





"Info" Vote Results –
A Test After Reciting
Potential Local
District Uses for
Added Revenue
Q. 18

EXHIBIT B

# Resolution: Let Voters Decide

- The Board's resolution is not an endorsement of the millage itself.

- We believe in empowering the community to make informed decisions.
  - Allowing voters to decide ensures democratic participation and transparency.



EXHIBIT B

# Questions or Feedback?

EXHIBIT B

12/9/25, 4:30 PM    Case 2:26-cv-10552-SKD-KGA ECF No. 1-1 PageID.38 Filed 02/17/26 Page 34 of 39
                    Litkouhi: The push for a new school enhancement millage in Oakland County

EXHIBIT C



# The Detroit News
#### SERVING MICHIGAN SINCE 1873

---

**OPINION** *This piece expresses the views of its author(s), separate from those of this publication.*

# Litkouhi: Oakland County's hidden tax debate: The push for a new school 'enhancement millage'

**Carol Beth Litkouhi**
Oct. 30, 2025, 8:31 a.m. ET

Oakland County school boards are quietly being asked to support placing a new Enhancement Millage on the ballot, possibly as soon as August 2026.

This proposal sets a troubling precedent. Michigan's school-funding system, restructured under Proposal A in 1994, was designed so that the state collects and distributes education dollars for operating costs. Local taxes were meant for buildings and infrastructure — not to create new layers of unrestricted operating taxes on top of what the state already manages. There is no end to unraveling that balance.

At first glance, 1.5 mills for six years may not sound like much — about $150 a year on a $200,000 home. But in Rochester Hills, where the average home is about $450,000, that same rate equals roughly $337.50 per year. Because the millage is assessed against taxable value (about half of market value), your bill rises as property values rise. What seems small quickly becomes hundreds of dollars more each year, with no expiration unless voters say no.

If passed, the millage would generate about $10.8 million per year for Rochester (where I serve on the board), but local taxpayers would pay slightly more than we receive. The funds would be unrestricted —usable for salaries, benefits, technology, athletics, yet there's no defined plan explaining why more revenue is needed or how it would be used.

EXHIBIT C

Even more concerning is how the proposal would reach the ballot. If school boards representing just "50 percent plus one" of students across Oakland County vote yes, the millage automatically appears on everyone's ballot — even in districts that vote no. Many of these conversations are happening quietly, without public notice or taxpayer input.

I was even asked not to mention the proposal publicly until after boards completed their votes. When I asked why — given that I'd like to hear from my constituents — I was told, "That's not how it's done. We shouldn't influence other districts." But that's exactly backward. School boards are accountable to their local communities, not to county-level political strategy.

Consider Rochester's finances. Our district operates on roughly $230 million in revenue, spending more than $15,000 per student — more than most private schools in Michigan. We maintain $48 million in savings and one of the state's strongest sinking funds, generating $9 million annually for facilities and infrastructure. We are not starved for funds. Our challenge is to ensure every dollar is managed responsibly and aligned with student learning.

The bigger picture is also revealing. Oakland already has the highest property taxes of any county in Michigan and contributes more to school funding than any other because of its high property values. Our districts already operate with larger budgets than most of the state. Adding another countywide operations tax simply isn't needed. Operating costs are — and should remain — the state's responsibility. Not an extra burden on local homeowners.

Districts in counties like Macomb and Wayne, which rely on enhancement millages, face very different circumstances. Many lack strong sinking funds and have far lower taxable values, so they depend more on local millages for basic operations. Using other counties as justification ignores these differences.

Supporters may argue that new revenue would help schools remain competitive or expand programs. But the state just passed a record-breaking education budget, providing $10,050 per student — the highest in Michigan's history. If districts are

EXHIBIT C

EXHIBIT C

struggling, we should examine how resources are allocated before asking taxpayers for more.

In Rochester, enrollment has declined by about 1,000 students since 2018, while staffing has increased by roughly 500 positions (many of them non-instructional). The issue isn't funding. It's a lack of alignment between staffing, enrollment, and results. Before asking residents to pay more, districts should right-size their structures, prioritize spending, and ensure that dollars directly support student achievement.

Oakland County residents are generous and deeply committed to education. But fiscal responsibility matters too. Strong schools are built on clear goals, measurable outcomes, and transparency — not on constant tax increases.

The truth is, Oakland County taxpayers already do more than their fair share to support Michigan's schools. Adding another countywide property tax for general operations isn't fiscal stewardship — it's mission creep. The proposed "enhancement millage" is a tax increase without a clear justification or plan. Before any board votes to advance it, voters deserve honesty, fiscal discipline, and respect for the people who ultimately foot the bill.

*Carol Beth Litkouhi is a trustee on the Rochester Community Schools Board of Education.*

EXHIBIT C

EXHIBIT D

Monday, 11/10/2025

**Resolution of Censure: Trustee Litkouhi**

**WHEREAS**, the Rochester Community Schools Board of Education recognizes the importance of maintaining the highest ethical and professional standards in all Board operations and communications; and

**WHEREAS**, Board Bylaw 1001 states that "Board members will take no private action that might compromise the Board or administration and will not share any document or information that has not already been shared by the District, including but not limited to confidential or privileged information"; and

**WHEREAS**, Trustee Litkouhi recently authored and published an opinion piece in *The Detroit News* that referenced confidential information shared by the Superintendent that had not been approved for release, presenting it publicly in a manner that was incomplete, misleading, and harmful to the reputation of the District and its leadership; and potentially fiscally harmful to the District and other Oakland County school districts, and

**WHEREAS**, this action constitutes a breach of Board Bylaw 1001, undermines the integrity of the Board/Superintendent relationship, makes it increasingly difficult for board members to receive necessary information in the future and compromises the District's ability to maintain confidentiality in sensitive matters; and

**WHEREAS**, the Board of Education must act to affirm its collective commitment to integrity, confidentiality, and trust in governance;

**NOW, THEREFORE, BE IT RESOLVED**, that the Rochester Community Schools Board of Education formally **censures Trustee Carol Beth Litkouhi** for her violation of Board Bylaw 1001 through the unauthorized disclosure and misrepresentation of confidential District information; and

**BE IT FURTHER RESOLVED**, that effective immediately Trustee Carol Beth Litkouhi is removed, without future assignments for one calendar year, from all committees and liaison roles; and

**BE IT FURTHER RESOLVED**, that the Board reaffirms its expectation that all Trustees will uphold the ethical standards outlined in Board Bylaws, Policies, and the Board Handbook, maintaining confidentiality, professionalism, and respect in all public and private actions.

EXHIBIT D



EXHIBIT E

**GENERAL RETENTION SCHEDULE #2**
**MICHIGAN PUBLIC SCHOOLS**
**APPROVED APRIL 11, 2023**

This General Retention and Disposal Schedule covers records commonly maintained by public and charter schools, school districts, and intermediate school districts. This schedule supersedes the schedule that was approved on December 7, 2010. The records that are described on the attached pages are deemed necessary (1) for the continued effective operation of Michigan government, (2) to constitute an adequate and proper recording of its activities, and (3) to protect the legal rights of the government of the State of Michigan and of the people. This schedule meets the administrative, legal, fiscal and archival requirements of the State of Michigan.

| **TABLE OF CONTENTS** | **PAGE NUMBER** | **ITEM NUMBERS** |
|---|---|---|
| Table of Contents | Page 1 | |
| General Administrative | Pages 2 - 3 | 100 - 109 |
| Superintendent/Board of Education | Pages 4 - 6 | 200 - 220 |
| Business Office | Pages 7 - 11 | 300 - 331 |
| Personnel | Pages 12 - 16 | 400 - 424 |
| Payroll | Pages 17 - 18 | 500 - 511 |
| Pupil Accounting | Pages 19 - 20 | 600 - 608 |
| Instruction | Page 21 | 700 - 703 |
| Information Technology | Pages 22 - 23 | 800 - 808 |
| Security/Public Safety | Page 24 | 900 - 908 |
| Facility Operations | Pages 25 - 26 | 1000 - 1011 |
| Food Service | Pages 27 - 29 | 1100 - 1122 |
| Transportation | Pages 30 - 31 | 1200 - 1211 |
| Television Services | Page 32 | 1300 - 1304 |
| Schools - Student Records | Pages 33 - 34 | 1400 - 1412 |
| Schools - Building Administration | Pages 35 - 37 | 1500 - 1521 |
| Schools - Guidance Counseling | Page 38 | 1600 - 1603 |
| Schools - Special Education | Page 39 | 1700 - 1702 |
| Schools - Early Childhood Education | Page 40 | 1800 - 1802 |
| Schools - Library | Page 41 | 1900 |
| Schools - Athletics | Page 42 | 2000 - 2006 |
| Professional Development | Page 43 | 2100 - 2104 |
| Community Education | Page 44 | 2200 – 2204 |
| Record Retention Guide | Pages 45 - 49 | |

EXHIBIT E



**State of Michigan**
**Records Management Services**
**General Schedule for Michigan Public Schools**

| Department | Item Number | Series Title | Series Description | Retention Period | Approval Date |
|---|---|---|---|---|---|
| Superintendent and Board of Education | 0200- | Board of Education Meeting Records - Open Sessions | These records document the proceedings of the school district's Board of Education and any subcommittees or advisory committees to the board. They may include, but may not be limited to, approved minutes and agenda packets containing any materials that are distributed to board members for review (such as budgets, district calendars, policies, contracts, election resolutions, etc.). | RETAIN UNTIL: School district is dissolved THEN: Transfer to the Archives of Michigan | 4/11/2023 |
| Superintendent and Board of Education | 0200A- | Board of Education Meeting Records – Audio and/or Video Recordings | These records document the proceedings of the school district's Board of Education and any subcommittees or advisory committees to the board. They may include, but may not be limited to, audio and/or video recordings of the meeting. | RETAIN UNTIL: Minutes are approved THEN: Destroy | 4/11/2023 |
| Superintendent and Board of Education | 0201- | Board of Education Meeting Records - Closed Session | These records document the official activities of the district's Board of Education. They may include, but may not be limited to, approved meeting minutes, agendas, audio and video recordings, and other supporting documentation related to closed meeting sessions only. [MCL 15.267(2)] | RETAIN UNTIL: Approval of the minutes of the regular meeting at which the closed session was held PLUS: 1 year, and 1 day THEN: Destroy | 4/11/2023 |
| Superintendent and Board of Education | 0202- | Notices of a Public Meeting | These records document the posting of notices that a public meeting will be held in compliance with the Open Meetings Act (MCL 15.265). They may include, but may not be limited to, posted notices of any meeting, including annual schedules and special meetings. | RETAIN UNTIL: Meeting is held or cancelled PLUS: 1 year THEN: Destroy | 4/11/2023 |
| Superintendent and Board of Education | 0203- | Board Member Files | These records document people who served on the district's Board of Education.  They may include, but may not be limited to, petitions, conference and training requests, and correspondence. | RETAIN UNTIL: Individual is no longer serving as a member of the board THEN: Destroy | 4/11/2023 |
| Superintendent and Board of Education | 0204- | Board Candidate Records | These records document people who ran for vacant school board seats. They may include, but may not be limited to, affidavit of identity, petition sheets, correspondence, election certificate, and receipts for the nominating petition. | RETAIN UNTIL: Date created PLUS: 2 years THEN: Destroy | 4/11/2023 |
| Superintendent and Board of Education | 0205- | Millage Files | These records document millage proposals. They may include, but may not be limited to, presentations, research, budgetary documents, ballot language, attorney opinions, and board resolutions. | RETAIN UNTIL: Date created PLUS: 2 years THEN: Destroy | 4/11/2023 |
| Superintendent and Board of Education | 0206- | Election Results (obsolete) | These records document the final vote count for each school election and include the Board of Canvassers certification. | These records are covered by GS 23.213. | 4/11/2023 |
| Superintendent and Board of Education | 0207- | Election Returns (obsolete) | These records document voting activity during a school district election. They may include, but may not be limited to, poll lists, statements, tally sheets, absent voters' applications, absent voters' return envelopes, absent voters' records, and other returns made by inspectors of the precincts. (MCL 168.811). | These records are covered by GS 23.223, 23.233, 23.234. | 4/11/2023 |

EXHIBIT E