UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROL BETH LITKOUHI,

Plaintiff,

v.

ROCHESTER COMMUNITY SCHOOL DISTRICT, *et. al*,

Defendants.
___________________________________/

Case No. 2:26-cv-10552-SKD-DRG

Honorable Susan K. DeClercq
Magistrate Judge David R. Grand

**PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Now comes Plaintiff, by and through her counsel, and pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, moves for judgment on the pleadings against the Defendant School District on the following Counts in her Complaint: Count 1 (free speech violation), Count 2 (unconstitutionally overbroad and vague Bylaw), Count 3 (exceeding the statutory powers grants to school boards), and Count 4 (contravening the public policy of Michigan). Her Count 5 (First Amendment Retaliation), is not addressed in this motion for judgment on the pleadings.

For the reasons explained in the accompanying Memorandum of Law, the subject Bylaw violates the law in several ways and should be held to be void *ab*

*initio*. As such, the subsequent censure based on the voided Bylaw should also be held to be void.

Plaintiff requests that this Court award her any declaratory, equitable, and/or injunctive relief this Court determines to be just and equitable, including attorneys fees.

Plaintiff conferred with Defendants' attorney pursuant to LR 7.1(a). There was a conference between attorneys on the motion in which the movant explained the nature of the motion or request and its legal basis and requested but did not obtain concurrence in the relief sought.

# TABLE OF CONTENTS


TABLE OF CONTENTS ........................................................................ iii

TABLE OF AUTHORITIES .................................................................... iv

MEMORANDUM OF LAW ....................................................................... 1

I. PRELIMINARY STATEMENT .................................................................. 1

II. STATEMENT OF FACTS ..................................................................... 2

III. LAW AND ARGUMENT ..................................................................... 3

A. Standards for a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings. .3

B. The Bylaw violates free speech protections. ........................................ 4

1. The free speech provisions of Michigan's Constitution prohibit this Bylaw's restriction of speech. ........................................................ 4

2. The federal First Amendment strongly protects speech on public matters and is violated by this Bylaw. ............................................... 7

3. School districts and school boards are units of government and may not infringe on free speech protections. ..................................... 8

4. Strict scrutiny applies to the free speech questions. ............................ 12

5. The foregoing free-speech law applied to the Bylaw shows that it violates free speech protections. ..................................................... 15

C. Facial challenges for overbreadth and vagueness. ................................ 16

D. The subject Bylaw violates Michigan's public policy. ............................ 20

E. The subject Bylaws exceed the authority granted to the school district. ......23

IV. CONCLUSION ................................................................................. 24

## TABLE OF AUTHORITIES

### Cases

*Abood v. Detroit Board of Ed*ucation, 431 U.S. 209 (1977) ....................................11
*Advisory Opinion on Constitutionality of 1975 PA 227 (Questions 2–10)*, 396 Mich. 465 (1976) ....................................7
*Brown v. Louisville-Jefferson Cnty. Metro Gov't*, 135 F.4th 1022 (6th Cir. 2025)....4
*Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410 (1993) ....................................12
*Eyde Const. v. Charter Tp. Of Meridian*, 119 Mich. App. 792 (1982) ......................7
*Good News Club v. Milford Central School*, 533 U.S. 98 (2001), ..........................11
*Ison v. Madison Local School District Board of Education,* 3 F.4th 887 (2021)......12
*Janus v AFSCME Council 31*, 585 U.S. 878 (2018)................................................11
*Kefgen v. Davidson*, 241 Mich. App. 611 (2000)....................................................10
*Kolendar v. Lawson*, 461 U.S. 352 (1984)...............................................................19
*Lovell v. Griffin*, 303 U.S. 444 (1938) ........................................................ 7, 16, 24
*Maryland Sec'y of State v. Joseph H. Munson Co., Inc.*, 467 U.S. 947 (1984).......19
*McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185 (2014) ...............................4, 8
*Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984)................................................................................................ 8, 18
*Michigan Gun Owners v. Ann Arbor Pub. Sch.*, 318 Mich. App. 338 (2016) .........10
*Michigan Open Carry Inc. v. Clio Area Sch. Dist.*, 318 Mich. App. 356 (2016) ....10
*Minnesota State Bd. For Community Colleges v. Knight*, 465 U.S. 271 (1984) .....11
*NAACP v. Button*, 371 U.S. 415 (1963) ..................................................................14
*People v. Burkman*, 341 Mich. App. 734 (2022) .......................................................1
*People v Smith*, 502 Mich. 624 (2018) .....................................................................22
*Pickering v. Board of Education of Township High School District* 205, 391 U.S. 563 (1968)...............................................................................................................11
*Police Dep't. of Chicago v. Mosley*, 408 U.S. 92 (1972) ..........................................9
*Reed v. Town of Gilbert, Arizona*, 576 U.S. 155 (2015) .................................... 9, 15
*Rosenberg v. Rector and Visitors of Univ. of Virginia*, 515 U.S. 819 (1995).9, 11, 15
*Speet v. Schuette*, 726 F.3d 867 (6th Cir. 2013) ............................................... 17, 18
*Stromberg v. People of State of California*, 283 U.S. 359 (1931) ................. 2, 7, 24
*Thornhill v. Alabama*, 310 U.S. 88 (1940)...............................................................18
*Twp. of Plymouth v. Hancock*, 236 Mich. App. 197 (1999)............................. 18, 19
*U.S. v. Playboy Ent. Group, Inc.*, 529 U.S. 803 (2000) ............................................4

*United States v. Salerno*, 481 U.S. 739 (1987) ....................................................16
*Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008)..............................................................................................................16
*Weaver v. University of Cincinnati*, 970 F.2d 1523 (1992)....................................22
*West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943) ............11

**Statutes**

M.C.L. § 380.1 *et seq*.............................................................................. 10, 23
M.C.L. § 380.11a ..........................................................................................23
M.C.L. § 380.3(3) .........................................................................................10
M.C.L. §15.231(2) ........................................................................................20
M.C.L. §15.243 .............................................................................................20
M.C.L. §15.261 *et seq*. ...................................................................................20
M.C.L. §15.263(1) ........................................................................................21
M.C.L. §18.1285 ...........................................................................................21
M.C.L. 15.263(2) ..........................................................................................21
M.C.L. 15.268 ...............................................................................................21

**Other Authorities**

1 Official Record, [Michigan] Constitutional Convention of 1961......................5, 6

**Rules**

Bylaw 1001"Code of Ethics" ........................................................ 1, 2, 15, 16, 24
DTMB schedule GS2 .....................................................................................21
Fed. R. Civ. P. 12(c) ........................................................................................3

**Treatises**

Tribe, American Constitutional Law, § 12–31, p. 1035 (2d ed., 1988) ..................19

**Constitutional Provisions**

Const. 1963, art VII, § 32.................................................................................9
Const. 1963, art. I, § 26(1) and (3).....................................................................9
Const. 1963, art. 9, § 23 ..................................................................................20
Const. 1963, art. I, § 5.......................................................................................4
Const. 1963, art. VIII, § 2 ................................................................................10
U.S. Const. amend. I .........................................................................................7

U.S. Const. amend. XIV §1 ..........................................................................7

# MEMORANDUM OF LAW

## I. PRELIMINARY STATEMENT

Defendant Rochester Community School District recently enacted a Bylaw wherein school board members such as Plaintiff are required to agree that they will not communicate with the public or others except for information that has been preapproved by the school district. This new Bylaw 1001—a "Code of Ethics"—was adopted on May 6, 2024, and requires that board members "will not share any document or information that has not already been shared by the District, including but not limited to confidential or privileged information."

This constraint on the sharing of information is a clear example of viewpoint discrimination and operates as a prior restraint on speech which is unconstitutional under the Michigan and federal constitutions. Such a state-imposed prior restraint is exactly the kind of restriction prohibited by the free speech provisions of the Michigan and federal constitutions.[1] "The maintenance of the opportunity for free political discussion to the end that government may be responsive to the will of the people and that changes may be obtained by lawful means, … is a fundamental

[1] For purposes of free speech protections, the Michigan and federal constitutions are generally considered "coterminous" by Michigan state law. *People v. Burkman*, 341 Mich. App. 734, 758 (2022). As they are interpreted the same for the purposes here, Plaintiff will refer to violations of both constitutions as some variant of "free speech violations," rather than always specifying which constitution is being violated.

principle of our constitutional system." *Stromberg v. People of State of California*, 283 U.S. 359, 369 (1931).

Plaintiff asks the Court to rule that the speech restriction found in the subject Bylaw violates the constitutional free speech provisions on its face and is void as a matter of law. Further, Plaintiff asks this Court to rule that the Bylaw is unconstitutionally vague and overbroad, exceeds the board's authority, and is void as the result of being contrary to public policy.

## II. STATEMENT OF FACTS

Plaintiff is an elected school board member. The subject Bylaws state that these are the rules governing the conduct of school board. "[These Bylaws] define the manner in which the Board meets, operates, and conducts its business. Bylaws are intended to provide for the Board's own internal governance…" (Complaint Exhibit A, Bylaws, ECF No. 1-1, PageID.22). The defendant School District recently enacted a bylaw restricting what school board members could discuss with the public. This restriction was not confined to confidential or privileged matters, as it stated: "Board members 'will not share any document or information ***that has not already been shared by the District, including but not limited to*** confidential or privileged information.'" (Complaint ¶13 and Exhibit A, PageID.8, 22) (emphasis added). Plaintiff contends that this a prior restraint of her free speech under both the Michigan and federal constitutions (Complaint ¶¶31-37, PageID.11). Further, she

alleges that this Bylaw is unconstitutionally overbroad and vague (Complaint ¶¶38-44, PageID.12), violates Michigan's public policy (Complaint ¶¶56-84, PageID.14-18), and that the prior-restraint Bylaw exceeds the authority granted to Michigan's school boards by statute (Complaint ¶¶45-55, PageID.12-14).

Plaintiff publicly discussed a proposed Oakland County-wide millage increase that the District had previously only discussed behind closed doors—although other school districts in Oakland County discussed it in public. (Complaint ¶14, ¶27 and Exhibit C, PageID.9, 38-40). The defendant school board censured Plaintiff—explicitly for her public discussion, which it determined to violate the Bylaw. (Complaint ¶24 and Exhibit D, PageID.10, 41).

Plaintiff originally filed her suit in state court on February 4, 2026 (PageID. 1-43). Defendants removed the action to this federal court on February 17, 2026. (PageID. 44-45). Plaintiff moved to remand the state-law portions of her suit to the state court (PageID. 101-18), but this Court denied Plaintiff's motion and elected to hear the state court claims (PageID. 155-71).

## III. LAW AND ARGUMENT

### A. Standards for a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings.

For a 12(c) motion:

> "[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."

> Applying that framework, "[a] motion brought pursuant to Rule 12(c) is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.' " The court may consider "documents attached to the pleadings," documents that are "referred to in the pleadings and [are] integral to the claims," and "matters of public record" without converting a motion for judgment on the pleadings to a motion for summary judgment.

*Brown v. Louisville-Jefferson Cnty. Metro Gov't*, 135 F.4th 1022, 1030 (6th Cir. 2025) (internal citations omitted).

As to burdens of proof, "'When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions.' [*U.S. v. Playboy Ent. Group, Inc.*, 529 U.S. 803, 816 (2000)]." *McCutcheon v. Federal Elec. Comm'n*, 572 U.S. 185, 207 (2014).

**B. The Bylaw violates free speech protections.**

**1. The free speech provisions of Michigan's Constitution prohibit this Bylaw's restriction of speech.**

The Michigan Constitution of 1963, Article 1, Section 5, states: "Every person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press." Const. 1963, art. I, § 5. This was a successor to the nearly identical 1908 Constitution provision.[2] The 1963

---

[2] Michigan's 1908 Constitution text can be viewed here: https://www.legislature.mi.gov/documents/historical/miconstitution1908asratified.pdf

Constitution only changed the wording of the 1908 provision by adding "express" after "speak" and "write," and changed "sentiments" to "views." The Constitutional Committee explained these changes as due to "the multiplicity of contemporary means of expression (as over and against the traditional means of speaking and writing) …" 1 Official Record, [Michigan] Constitutional Convention of 1961, at 466.[3]

The Convention also moved free speech protection from Article II to Article I to highlight the importance of this liberty.

> The [Constitutional] committee recommends herewith to the convention that the declaration of rights, which is now article II of the present constitution, become article I of the new constitution. In the committee's opinion the liberties of the people are so fundamental to the Michigan constitution and to free representative government generally that the declaration of rights which establishes the fundamental principles of liberty and sets up the basic legal guideposts for their implementation and enforcement, should appear as the first article in the new constitution.

*Id*. at 466.[4]

---

[3] The text of the 1 Official Record, Michigan Constitutional Convention of 1961 pertaining to Art I, Sec. 5 can be accessed here: https://www.mackinac.org/constitution/uploads/con-con_1961_art-1-sec-5.pdf?v=2025-11-05T14:59:29#pagemode=bookmarks

[4] *Id*.

At the 1961 Constitutional Convention, Delegate Harold Norris[5] stated the purpose of this constitutional provision and highlighted the centrality of public discussion of public matters to this free speech provision:

> There is a two fold function, as Professor Zachariah Chaffey, in his classic book Free Speech in the United States, indicated. There is, first of all, the personal right of expression, the personal view; and second, ***and more important, perhaps, is the public's right to know, the right to receive information, the right to listen, the right to hear views***, so that people may understand these views and exercise personal judgments in expressing themselves at the polls, and in other forms, by which people express themselves.

1 Official Record, [Michigan] Constitutional Convention of 1961, at 476 (emphasis added).[6]

In interpreting the Michigan Constitution, the courts have said "Political expression must be afforded the broadest protection in order to ensure the unfettered interchange of ideas for the bringing about of political and social change; debate on public issues should be uninhibited, robust, and wide open. *Advisory Opinion on*

---

[5] Delegate Norris has been described in this way: "Harold Norris was a Detroit attorney and professor at the Detroit College of Law. In addition, he was Democratic delegate to the Michigan Constitutional Convention, 1961-1962, and was an officer of the National Lawyers Guild." https://findingaids.lib.umich.edu/catalog/umich-bhl-851941

[6] The text of the Official Record of the 1961 Constitutional Convention: https://www.mackinac.org/constitution/uploads/con-con_1961_art-1-sec-5.pdf?v=2025-11-05T14:59:29#pagemode=bookmarks

*Constitutionality of 1975 PA 227 (Questions 2–10)*, 396 Mich. 465, 494 (1976)." *Eyde Const. v. Charter Tp. of Meridian*, 119 Mich. App. 792, 794-5 (1982).

**2. The federal First Amendment strongly protects speech on public matters and is violated by this Bylaw.**

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; …" U.S. Const. amend I. This is made applicable to the states via the 14th Amendment, U.S. Const. amend. XIV §1.

The federal courts recognize the importance of political speech and open discussion of political questions as central to the First Amendment.

> The maintenance of the opportunity for free political discussion to the end that government may be responsive to the will of the people and that changes may be obtained by lawful means, an opportunity essential to the security of the Republic, is a fundamental principle of our constitutional system. A statute which upon its face, and as authoritatively construed, is so vague and indefinite as to permit the punishment of the fair use of this opportunity is repugnant to the guaranty of liberty contained in the Fourteenth Amendment.

*Stromberg*, 283 U.S. at 369.

The suppression of political opinions of the minority by the majority is the essence of what the First Amendment prohibits.

> As *Stromberg* and *Lovell* [*v. Griffin*, 303 U.S. 444 (1938)] demonstrate, there are some purported interests—such as a desire to suppress support for a minority party or an unpopular cause, or to exclude the expression of certain points of view from the marketplace of ideas—that are so plainly illegitimate that they would immediately invalidate the rule. The

> general principle that has emerged from this line of cases is that the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others.

*Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984).

The protection of minority political positions and expression continues to garner the strongest protection. Political participation of the minority is always protected.

> If the First Amendment protects flag burning, funeral protests, and Nazi parades—despite the profound offense such spectacles cause—it surely protects political campaign speech despite popular opposition. See *Texas v. Johnson*, 491 U.S. 397 (1989); *Snyder v. Phelps*, 562 U.S. 443 (2011); *National Socialist Party of America v. Skokie*, 432 U.S. 43 (1977) (per curiam). Indeed, as we have emphasized, the First Amendment "has its fullest and most urgent application precisely to the conduct of campaigns for political office." *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971).

*McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191 (2014) (internal citations cleaned up).

**3. School districts and school boards are units of government and may not infringe on free speech protections.**

The First Amendment is applicable not only to the states, but also to subunits of state government vested with state authority.

> The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech." U.S. Const., Amdt. 1. Under that Clause, ***a government, including a municipal government vested with state authority***, "has no

> power to restrict expression because of its message, its ideas, its subject matter, or its content."

*Reed v. Town of Gilbert, Arizona*, 576 U.S. 155, 163 (2015), citing *Police Dep't. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972) (emphasis added).

The Supreme Court has applied First Amendment protections to "instrumentalities" of state governments which include public schools and universities. *Rosenberg v. Rector and Visitors of Univ. of Virginia*, 515 U.S. 819, 822 (1995).

School districts in Michigan are subdivisions of the state and instrumentalities for constitutional-protection purposes.

> The University of Michigan, Michigan State University, Wayne State University, and any other public college or university, community college, ***or school district*** shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin …
>
> ***
>
> For the purposes of this section 'state' includes, but is not necessarily limited to, the state itself, any city, county, any public college, university, or community college, ***school district, or other political subdivision or governmental instrumentality*** of or within the State of Michigan not included in sub-section 1.

Const. 1963, art I, § 26(1) and (3), (emphasis added).

Const. 1963, art. VII, controls "Local Government." Const. 1963, art VII, § 32 includes school districts empowered by the legislature and the constitution as units of local government. "Any county, township, city, village, authority ***or school district*** empowered by the legislature or by this constitution …" Const. 1963 art.

VII, § 32 (emphasis added). And, as a whole, the public school system is a constitutionally-created and protected part of state government. "The legislature shall maintain and support a system of free public elementary and secondary schools as defined by law." Const. 1963, art. VIII, § 2.

Michigan's school districts are governed by the Revised School Code, M.C.L. § 380.1, *et seq*. By definition, a school board is the "governing body of a local school district unless clearly otherwise stated." M.C.L. § 380.3(3). Additionally, the legislature has defined school districts in lists of local units of government.

> [F]or many other purposes, the Legislature has explicitly identified school districts as "local units of government." See, e.g., MCL 550.1951 (including 'school districts" within the definition of "local unit of government" in an act providing that certain entities are subject to the Patient's Right to Independent Review Act, MCL 550.1901 et seq.); MCL 286.942(g) (including "school district[s]" within the definition of "local unit of government" for purposes of the Rural Development.

*Michigan Open Carry Inc. v. Clio Area Sch. Dist*., 318 Mich. App. 356, 368 (2016), citing *Michigan Gun Owners v. Ann Arbor Pub. Sch.*, 318 Mich. App. 338, 350-55 (2016).

Michigan school boards performing their functions constitute "a quasi-legislative body." *Kefgen v. Davidson*, 241 Mich. App. 611, 619 (2000). The directives of a state instrumentality are subject to the First Amendment regardless of how these are characterized.

Free-speech violations by school boards and districts are triggered in numerous ways. In *Rosenberg*, the issue was with "guidelines" established for student activity funds. *Rosenberg*, 515 U.S. at 824. In *Good News Club v. Milford Central School*, 533 U.S. 98 (2001), it was "regulations" authorized by their education code. Purely discretionary decisions of school boards trigger First Amendment scrutiny—in *Pickering v. Board of Education of Township High School District* 205, 391 U.S. 563 (1968) the school board violated a teacher's rights when it fired her for criticizing "a recently proposed tax increase." *Id*. at 564. There, the school district unsuccessfully argued that criticizing others was not allowed due to the fact the teacher was an employee of the school district. "The Board contends that 'the teacher by virtue of his public employment has a duty of loyalty to support his superiors in attaining the generally accepted goals of education … '" *Id*. at 568-9.

In *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943) a board of education "resolution" that students must salute the flag triggered First Amendment scrutiny and was struck down. *Id*. at 626. In *Abood v. Detroit Board of Ed*ucation, 431 U.S. 209 (1977) (reversed by *Janus v AFSCME Council 31*, 585 U.S. 878 (2018)) a collective bargaining agreement between a school district and a union triggered First Amendment scrutiny. *Id*. at 212-13. In *Minnesota State Bd. For Community Colleges v. Knight*, 465 U.S. 271 (1984) it was the policies arrived at via state labor law-mandated "meet and confer" sessions which triggered such

scrutiny. *Id*. at 274. In *Ison v. Madison Local School District Board of Education*, 3 F.4th 887 (6th Cir. 2021) it was a school board policy prohibiting speech that was considered abusive, personally directed, and antagonistic at school board meetings that was struck down for violating the First Amendment. *Id*. at 895.

If these multiplicity of official actions by state instrumentalities can trigger constitutional scrutiny, then so can this subject Bylaw.

**4. Strict scrutiny applies to the free speech questions.**

The evaluation of a statute or bylaw as violative of the First Amendment is conducted by different standards depending on the type of restriction. "'Content based' restrictions, 'those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests.'" *Reed*, 576 U.S. at 163.

In determining if the restriction is content based, the first step is whether it is content neutral on its face. *Reed*, 576 U.S. at 165. "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Id*., citing *Cincinnati v. Discovery Network, Inc*., 507 U.S. 410, 429 (1993).

> Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more

> subtle, defining regulated speech by its function or purpose. Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny.
>
> Our precedents have also recognized a separate and additional category of laws that, though facially content neutral, will be considered content-based regulations of speech: laws that cannot be "justified without reference to the content of the regulated speech," or that were adopted by the government "because of disagreement with the message [the speech] conveys," *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Those laws, like those that are content based on their face, must also satisfy strict scrutiny.

*Reed*, 576 U.S. at 163-4 (cleaned up).

Just because a restriction can be read to be facially neutral does not save it. Nor do innocent motives save a restrictive content-neutral law. It is the operation of such a law and whether it can be used for a censorial purpose that determines its restrictive nature.

> Innocent motives do not eliminate the danger of censorship presented by a facially content-based statute, as future government officials may one day wield such statutes to suppress disfavored speech. That is why the First Amendment expressly targets the operation of the laws—i.e., the "abridg[ement] of speech"—rather than merely the motives of those who enacted them. U.S. Const., Amdt. 1. "'The vice of content-based legislation ... is not that it is always used for invidious, thought-control purposes, but that it lends itself to use for those purposes.'" *Hill*, supra, at 743, 120 S.Ct. 2480 (SCALIA, J., dissenting).

*Reed*, 576 U.S. at 167.

Further, legislative intent such as the regulation of professional conduct cannot excuse the restriction if the operation of the law makes it a content-based restriction.

> Although [*NAACP v. Button*, 371 U.S. 415, 438-39 (1963)] predated our more recent formulations of strict scrutiny, the Court rightly rejected the State's claim that its interest in the "regulation of professional conduct" rendered the statute consistent with the First Amendment, observing that "it is no answer ... to say ... that the purpose of these regulations was merely to insure high professional standards and not to curtail free expression."

*Reed*, 576 U.S. at 167.

Only if the law is not facially discriminatory or operating in a discriminatory manner—can it be considered content neutral, and therefore subject to a lower standard of scrutiny. *Id*.

There are two subsets of content-based discrimination, and both trigger strict scrutiny. "Subject matter discrimination" occurs when the government regulates based on a topic or category of discussion. An example of this might be banning all discussion on a controversial topic without regard to the position taken by the speaker. Such a law would be subject to strict scrutiny and will be "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163.

An even more dangerous restriction is "viewpoint discrimination." This restricts speech or expression based on the speaker's viewpoint. I.e., it restricts one side of a debate or public discussion. "Government discrimination among viewpoints—or the regulation of speech based on 'the specific motivating ideology or the opinion or perspective of the speaker'—is a 'more blatant' and 'egregious

form of content discrimination.'" *Reed*, 576 U.S. at 168-69, citing *Rosenberg*, 515 U.S. at 829. This too is subject to the same strict scrutiny.

5. **The foregoing free-speech law applied to the Bylaw shows that it violates free speech protections**.

The school board action in enacting and enforcing this Bylaw is very much akin to the other actions of school districts and school boards that have triggered free-speech scrutiny as discussed above. This Bylaw is not content neutral. Since board members can only communicate what has already been approved by the board, by its plain language it prohibits the communicating of minority opinions. Sharing information is the dictionary definition of "communication." "[T]he act or process of using words, sounds, signs, or behavior to express or exchange information or to express thoughts, feelings, etc., to another person."[7]

The Bylaw is not narrowly tailored to any acceptable government interest because there is no allowable government interest in silencing the minority. It is content-based on its face as it only prohibits communications not pre-approved by the majority. It prohibits communications based on the message—minority opinions that are not shared by the board as a whole. This is a prohibition on what the message conveys in its broadest sense.

[7] Merriam-Webster online dictionary, accessed here: https://www.merriam-webster.com/dictionary/communication

Even assuming that a minority opinion could still be shared because there could be a hypothetical event where the majority approved its communication despite the majority not holding that view, this would still constitute an impermissible pre-approval requirement. In *Lovell*, supra, a city ordinance which required pre-approval for the distribution of pamphlets, literature, and the like, was struck down. "Legislation of the type of the ordinance in question would restore the system of license and censorship in its baldest form." *Lovell*, 303 U.S. at 452.

C. **Facial challenges for overbreadth and vagueness.**

The motion before the Court is a facial challenge to the subject Bylaw 1001—a "Code of Ethics"—that prohibits board members from communicating openly and freely with their constituents and the public: "[Board members] ***will not share any document or information that has not already been shared by the District***, ***including but not limited*** to confidential or privileged information." *Id*.

The general standard for facial constitutional challenges has been set by the Supreme Court: "Under *United States v. Salerno*, 481 U.S. 739 (1987), a plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the Act would be valid,' i.e., that the law is unconstitutional in all of its applications. *Id*., at 745." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 459 (2008) (cleaned up).

However, this general standard is modified for the specific instance of a free speech-based constitutional challenge. For such challenges the high court has created a subset of facial challenge—overbreadth.

> In the First Amendment context, however, we have recognized "a second type of facial challenge, whereby a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010).

*Am. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021).

Our Circuit has described the two challenges, facial and as-applied, in *Speet v. Schuette*, 726 F.3d 867 (6th Cir. 2013).

> A facial challenge to a law's constitutionality is an effort "to invalidate the law in each of its applications, to take the law off the books completely." *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir.2009) (en banc); see also *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, n. 5 (1982) ("a 'facial' challenge ... means a claim that the law is 'invalid in toto—and therefore incapable of any valid application.' " (quoting *Steffel v. Thompson*, 415 U.S. 452, 474 (1974))). In contrast to an as-applied challenge, which argues that a law is unconstitutional as enforced against the plaintiffs before the court, a facial challenge "is not an attempt to invalidate the law in a discrete setting but an effort 'to leave nothing standing[.]' " *Connection Distributing Co.*, 557 F.3d at 335 (en banc) (quoting *Warshak v. United States*, 532 F.3d 521, 528 (6th Cir. 2008) (en banc)).

*Speet*, 726 F.3d at 871-2 (cleaned up).

The general rule is that "to 'succeed in a typical facial attack,' a plaintiff must establish '"that no set of circumstances exists under which [the statute] would be valid."' … Although this is the general rule, an exception exists for facial challenges

based on the First Amendment." *Id*. Free-speech facial-challenge plaintiffs have a lesser burden of showing that the challenged law would have only a "substantial number of instances" where the law (or bylaw) could not be applied constitutionally:

> Where a plaintiff makes a facial challenge under the First Amendment to a statute's constitutionality, the "facial challenge" is an "overbreadth challenge." ("Only a statute that is substantially overbroad may be invalidated on its face." Instead of having to prove that no circumstances exist in which the enforcement of the statute would be constitutional, the plaintiff bears a lesser burden: "to demonstrate that a 'substantial number of instances exist in which the law cannot be applied constitutionally.' " Thus, "[t]he First Amendment doctrine of overbreadth is an exception to [the] normal rule regarding the standards for facial challenges."

*Speet*, 726 F.3d at 872 (internal citations omitted).

In determining whether a government requirement that constrains speech is void for overbreadth, the relevant factor is that requirement's chilling of free speech:

> The overbreadth doctrine finds its genesis in *Thornhill v. Alabama*, 310 U.S. 88 (1940). When considering whether an ordinance is overbroad, a court should consider the realistic potential of the ordinance to chill constitutionally protected speech. See *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 799–801 (1984). "In short, there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Id*. at 801, 104 S.Ct. 2118.

*Twp. of Plymouth v. Hancock*, 236 Mich. App. 197, 202 (1999).

As with overbreadth, a government rule can be invalid for vagueness. "Although both the void-for-vagueness and overbreadth doctrines are concerned with curbing arbitrary and discriminatory enforcement, they are nonetheless distinct

jurisprudential concepts." *Hancock*, 236 Mich. App. at 199-200, citing *Kolendar v. Lawson*, 461 U.S. 352, 357-62 (1984) and *Maryland Sec'y of State v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 964-70 (1984). However, when freedom of speech is implicated, the two doctrines "even more closely parallel each other, given that each is also concerned with the possibility that a statute or ordinance might impermissibly chill the freedom of expression." *Hancock*, 236 Mich. App., at 200, citing *Grayned v. City of Rockford*, 408 U.S. 104, 108–9 (1972); Tribe, American Constitutional Law, § 12–31, p. 1035 (2d ed., 1988).

In both Michigan and federal law, "An ordinance is unconstitutionally vague if it (1) does not provide fair notice of the type of conduct prohibited or (2) encourages subjective and discriminatory application by delegating to those empowered to enforce the ordinance the unfettered discretion to determine whether the ordinance has been violated." *Hancock*, 236 Mich. App. at 200.

Here, the prohibition on communication that has not been preapproved by the board is so vague and overbroad as to be no standard at all. The universe of information that has not been previously shared by the board is near infinite. There is no fair notice of prohibited conduct. The speaker can only guess at what she is allowed or disallowed to say. The board has unfettered discretion to interpret what is prohibited. This is an inherent chill on free speech.

**D. The subject Bylaw violates Michigan's public policy.**

Michigan's public policy embodied in its Constitution, statutes, and opinions requires openness in its governmental operations. Agreements or policies such as the requirements of the Bylaw that violate this public policy are void. *People v Smith*, 502 Mich. 624 (2018). In addition to the free speech protections discussed above, the Michigan Constitution states that citizens of the state have a right to know about public finances and records: "All financial records, accountings, audit reports and other reports of public moneys shall be public records and open to inspection." Const. 1963, art. 9, § 23. The Michigan Freedom of Information Act (FOIA) states:

> It is the public policy of this state that all persons … are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act. The people shall be informed so that they may fully participate in the democratic process.

M.C.L. §15.231(2).

By statute, FOIA provides that certain materials are exempt from disclosure. M.C.L. §15.243. But information related to proposed millages are not included in these exemptions. *Id.* Michigan's Open Meetings Act (OMA), M.C.L. §15.261 *et seq.*, requires that public bodies, such as the school board here, make decisions in open meetings so that the public can participate. OMA contains broad language to ensure that the public knows of the activities of its elected officials and can participate and provide feedback. OMA states, inter alia:

> All meetings of a public body must be open to the public and must be held in a place available to the general public. All persons must be permitted to attend any meeting except as otherwise provided in this act. The right of a person to attend a meeting of a public body includes the right to tape-record, to videotape, to broadcast live on radio, and to telecast live on television the proceedings of a public body at a public meeting. The exercise of this right does not depend on the prior approval of the public body.

M.C.L. §15.263(1). OMA further states that: "All decisions of a public body must be made at a meeting open to the public." M.C.L. 15.263(2). OMA provides for a limited number of activities that can be done in a closed meeting away from the public. M.C.L. 15.268. None of these exceptions apply to prohibitions on communications that have not been preapproved by the board majority.

The Michigan Department of Technology, Management, and Budget (DTMB) has authority to set schedules for the retention of documents and records for local political subdivisions. M.C.L. §18.1285. This applies to the defendant District. Pursuant to DTMB schedule GS2, item number 0205, Superintendents and Boards of Education must keep records of "Millage Files." "These records document millage proposals. They may include, but may not be limited to, presentations, research, budgetary documents, ballot language, attorney opinions, and board resolutions." (Exhibit E, ECF No. 1-1, PageID.42-3). The language of GS2-0205 above would include the information related to the proposed millage that was shared by Plaintiff and other information referenced in Plaintiff's Complaint at Exhibit B. (PageID. 19-33). There is no indication in Schedule GS2-0205 that such records as

Exhibit B are or could be confidential, privileged, or exempt from FOIA (with the possible exception of attorney opinions, which are not at issue here), so prohibiting board members from publicly discussing them violates the public policy of openness.

Michigan law states that agreements contravening public policy are void and unenforceable. *Smith*, supra. "Public policy can be found 'in our state and federal constitutions, our statutes, and the common law,' among other sources." *Smith*, 502 Mich. at 632-33. Agreements requiring a candidate's agreement to withdraw from seeking public office are void as against public policy. *Id*. at 640. This is because "Schemes that affect the 'selection and eligibility of candidates ... inevitably affect[ ]—at least to some degree—the individual's right to vote and his right to associate with others for political ends.'" *Id*. at 637. Analogous to the holding in *Smith*, an agreement by a public board preventing a board member from speaking and associating with the public about non-confidential information that is open to the public under several of our laws is a contravention of public policy.

The federal courts will likewise invalidate an agreement if it contravenes public policy. "Our consideration of the public policy question in the foregoing decisions leads to the conclusion that the district court correctly found that the indemnification agreement in the present case was repugnant to public policy, and therefore, invalid." *Weaver v. University of Cincinnati*, 970 F.2d 1523, 1538 (1992).

E. **The subject Bylaws exceed the authority granted to the school district**.

Michigan's school districts are governed by the Revised School Code, M.C.L. § 380.1 *et seq*. The Revised School Code limits school districts to certain powers expressed or implied.

> A general powers school district has all of the rights, powers, and duties expressly stated in this act; may exercise a power implied or incident to a power expressly stated in this act; and, except as otherwise provided by law, may exercise a power incidental or appropriate to the performance of a function related to operation of a public school and the provision of public education services in the interests of public elementary and secondary education in the school district, including, but not limited to, all of the following:

M.C.L. § 380.11a.

Briefly, the powers are limited to those "incidental or appropriate" to (a) "educating pupils" (b) "providing for the safety and welfare of pupils while at school," (c) acquiring and obtaining facilities, (d) managing employees, and (e) receiving and managing funds. *Id*.

The powers of a school board are further defined by the Revised School Code. "The board of a general powers school district shall adopt bylaws. These bylaws may establish or change board procedures, the number of board officers, titles and duties of board officers, and any other matter related to effective and efficient functioning of the board." M.C.L. § 380.11a(6).

Plaintiff and other school board members are not employees. There is nothing explicit or implied in the Revised School Code that allows it to control the

communications of board members with each other or the general public whom they serve. Declaring information about a proposed millage confidential and un-shareable is not a power that can be found in M.C.L. § 380.11a(6). No general and undefined prohibition on communications that have not been pre-approved can be found in the authorizing statute. It is not necessary to the efficient and effective functioning of the board. Presumably this school board and others functioned prior to the adoption of this restriction or anything like it. Therefore, it cannot be said to be "necessary." A school board cannot silence board members so as to keep them from publicly disagreeing with the rest of the board. A school board cannot define duties of board officers in such a way that it contradicts the laws of this state. Therefore, because a school district has no statutory authority to restrict the speech of its board members in this way, any bylaw that does this is void *ab initio*.

## IV. CONCLUSION

For the reasons provided above, this Court should hold that the subject Bylaw is invalid and void *ab initio*. As it is void *ab initio*, the subsequent censure for violating it cannot stand and must also be voided. "The first clause of the statute being invalid upon its face, the conviction of the appellant, which so far as the record discloses may have rested upon that clause exclusively, must be set aside." *Stromberg*, 283 U.S. at 369-370. Similarly, in *Lovell*, supra, because the pre-approval ordinance was void, subsequent actions under it were void. "As the

ordinance is void on its face, it was not necessary for appellant to seek a permit under it." *Id*., at 452.

Respectfully Submitted,

Dated: July 23, 2026

By: */s/ Derk A. Wilcox*
MACKINAC CENTER LEGAL FOUNDATION
140 West Main Street
Midland, MI 48640
Tel: (989) 631-0900
Fax: (989) 631-0964
wilcox@mackinac.org
Attorneys for Plaintiff