UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROL BETH LITKOUHI,

Plaintiff,

Judge Susan K. DeClercq
Magistrate Judge David R. Grand

v

No. 26-10552

ROCHESTER COMMUNITY SCHOOLS DISTRICT, MICHELLE BUELTEL, JESSICA GUPTA, JULIE ALSPACH, JAYSON BLAKE, and BARB ANNESS,

Defendants.
______________________________________/

DERK A. WILCOX (P66177)
PATRICK J. WRIGHT (P54052)
MACKINAC CENTER LEGAL FOUNDATION
*Attorneys for Plaintiff*
140 West Main Street
Midland, MI 48640
(989) 631-0900
wilcox@mackinac.org

KENNETH B. CHAPIE (P66148)
LINDSAY P. HAZEN (P85861)
GIARMARCO, MULLINS & HORTON, P.C.
*Attorneys for Defendants*
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7048
kchapie@gmhlaw.com
lhazen@gmhlaw.com

---

**DEFENDANTS MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FEDERAL RULE OF CIVIL PROCUDURE 12(C)**

**Statement Regarding Concurrence Pursuant to LR 7.1(a):** The undersigned counsel certifies that counsel communicated via telephone conference on July 22, 2026, with opposing counsel, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief; opposing counsel does not concur in the relief sought.

## INTRODUCTION

This is a political dispute dressed as a constitutional case. Plaintiff Carol Beth Litkouhi is an elected trustee of the Rochester Community School District Board of Education. In October 2025, the District's Superintendent briefed her, in confidence, on a proposed countywide enhancement millage that every school board in Oakland County would soon consider. Plaintiff announced on the spot that she would take the matter public — and she did, publishing an op-ed in The Detroit News, in her capacity as a trustee, built on the contents of the confidential briefing. A majority of her then-colleagues responded the way deliberative bodies have responded to perceived breaches of trust since the founding: they adopted a resolution of censure and temporarily reassigned her committee and liaison roles. Plaintiff kept her seat, her vote, her voice, and her constituents. The Board's public minutes show she has since attended every meeting, made motions, cast dissents, spoken in public comment, and even stood for election as Board President. Undeterred in every observable respect, she asks this Court to hold that her colleagues violated the First Amendment by criticizing her.

The Supreme Court has already answered that request. In *Houston Community College System v. Wilson*, 595 U.S. 468 (2022), a unanimous Court held that a censure of an elected official by her own board is not an actionable adverse action: elected representatives are expected to "shoulder a degree of criticism . . . and to continue exercising their free speech rights when the criticism comes," and a censure is itself "a form of speech by elected representatives" that the First Amendment protects rather

than punishes. *Id.* at 478–79. Every element of Plaintiff's retaliation claim fails under that framework. The disclosure of a confidential briefing obtained through her office was not protected citizen speech. The censure was the Board's own protected expression, and the one-year reassignment of advisory committee roles — positions no member is entitled to hold — is precisely the kind of de minimis internal governance that courts across the country have held non-actionable. The Complaint pleads no chill, objective or subjective; the public record refutes any. And the Complaint's own exhibits show the Board acted on Plaintiff's admitted breach of Bylaw 1001 — not her viewpoint.

Plaintiff's remaining theories fare no better. Bylaw 1001 is a code of ethics governing the official conduct of seven Board members, adopted under express statutory authority; it restrains no citizen's speech, licenses nothing, and is neither vague nor overbroad — particularly as applied to a member who was personally asked to keep the briefing confidential and published anyway. The District cannot be liable under Monell because no underlying constitutional violation exists, and the individual Board members — sued in their official capacities only — stand in the District's shoes. The state-law claims fail because the Revised School Code authorizes the bylaw and governmental immunity bars any public-policy tort.

Defendants therefore respectfully request that the Court grant judgment on the pleadings under Rule 12(c) and dismiss the Complaint in its entirety, with prejudice: Counts I and II because Bylaw 1001 is constitutional under the conterminous

guarantees of the Michigan and United States Constitutions; Counts III and IV because the bylaw is statutorily authorized and the public-policy claim is barred; and Count V because Plaintiff has not pleaded — and cannot plead — protected speech, an adverse action, a cognizable chill, or causation. The ballot box, not the courtroom, is the forum for this disagreement.

# TABLE OF CONTENTS


INTRODUCTION .......... ii

INDEX OF AUTHORITIES .......... vii

STATEMENT OF ISSUES PRESENTED AND MOST CONTROLLING AUTHORITY .......... x

STATEMENT OF FACTS .......... 1

1. The Parties .......... 1

2. The Bylaw .......... 1

3. Litkouhi's Sharing of Confidential Information .......... 2

4. The Censure .......... 3

LEGAL STANDARD .......... 5

LAW AND ARGUMENT .......... 6

I. PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM FAILS AS A MATTER OF LAW .......... 6

a. The Absence of Any Protected Speech Bars Plaintiff's Claim. .......... 7

b. The Absence of Any Adverse Action Bars Plaintiff's Claim. .......... 10

i. *The Censure Resolution Is the Board's Own Protected Speech—and Words Alone Are Not an Adverse Action.* .......... 11

ii. *The One-Year Reassignment of Committee and Liaison Roles Does Not Convert the Board's Speech Into an Adverse Action.* .......... 12

c. Plaintiff Pleads, at Most, a Subjective Chill—Which Is Not Actionable—and Her Own Conduct Refutes Any Chill. .......... 17

d. Plaintiff Does Not Plead a Causal Connection Between Protected Speech and an Adverse Action. .......... 19

II. BYLAW 1001 IS CONSTITUTIONAL — IT IS NOT A PRIOR RESTRAINT, NOT VAGUE, AND NOT OVERBROAD. .......... 21

a. Bylaw 1001 Governs the Official Conduct of Board Members — It Does Not Restrain Private Speech. .......... 21

b. Bylaw 1001 Is Not a Prior Restraint. .......... 22

c. Bylaw 1001 Is Not Unconstitutionally Vague. .......... 23

d. Bylaw 1001 Is Not Overbroad. .......... 25

III. THE DISTRICT CANNOT BE HELD LIABLE UNDER

MONELL. ..... 26

a. No Underlying Constitutional Violation Means No Monell Liability. ..... 27

b. Plaintiff Identifies No Unconstitutional Policy That Was the "Moving Force" Behind Any Injury. ..... 27

IV. PLAINTIFF'S STATE-LAW CLAIMS FAIL: THE SCHOOL CODE AUTHORIZES BYLAW 1001, AND THE PUBLIC-POLICY CLAIM IS BARRED BY GOVERNMENTAL IMMUNITY. ..... 28

CONCLUSION ..... 30

CERTIFICATE OF ELECTRONIC SERVICE ..... 31

# INDEX OF AUTHORITIES

**Cases**

*Agema v. City of Allegan*, 826 F.3d 326 (6th Cir. 2016) .................... 6
*Alexander v. United States*, 509 U.S. 544 (1993).................... 22, 23
*Aquilina v. Wriggelsworth*, 759 F. App'x 340 (6th Cir. 2018).................... 8
*Aquilina v. Wrigglesworth*, 298 F. Supp. 3d 1110 (W.D. Mich. 2018).................... 8, 9, 10
*Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988 (6th Cir. 2017) .................... 28
*Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397 (1997) .................... 28
*Berg v. Tittabawassee Twp.*, No. 355404, 2021 WL 6064357 (Mich. Ct. App. Dec. 21, 2021) .................... 30
Blair v. Bethel School District, 608 F.3d 540 (9th Cir. 2010) .................... 15
*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) .................... 25
*City of Los Angeles v. Heller*, 475 U.S. 796 (1986) .................... 27
*City of Owosso v. Pouillon*, 254 Mich. App. 210 (2002) .................... 21
*Connally v. Gen. Const. Co.,* 269 U.S. 385 .................... 24
*Courser v. Mich. House of Representatives,* 831 F. App'x 161 (6th Cir. 2020).................... 1, 5, 6
*Dillaplain v. Xenia Cmty. Schs. Bd. of Educ.,* No. 3:13-CV-104, 2013 WL 5724512 (S.D. Ohio Oct. 21, 2013).................... 11
*Fouts v. Warren City Council*, 97 F.4th 459 (6th Cir. 2024)), appeal decided on other grounds, 168 F.4th 791 (6th Cir. 2026).................... 13
*Fritz v. Charter Twp. of Comstock*, 592 F.3d 718 (6th Cir. 2010) .................... 10
*Garcetti v. Ceballos*, 547 U.S. 410 (2006) .................... 8, 10, 22
*Goldstein v. Galvin*, 719 F.3d 16 (1st Cir. 2013) .................... 11
*Gordon v. Warren Consol. Bd. of Educ.*, 706 F.2d 778 (6th Cir. 1983).................... 12, 17
*Grayned v. City of Rockford*, 408 U.S. 104 (1972) .................... 24
*Handy-Clay v. City of Memphis*, 695 F.3d 531 (6th Cir. 2012).................... 6, 7
*Harbin-Bey v. Rutter*, 420 F.3d 571 (6th Cir. 2005).................... 7, 20
*Hartman v. Register*, No. 1:06-CV-33, 2007 WL 915193 (S.D. Ohio Mar. 26, 2007).................... 8
*Henderson v. City of Flint, Michigan*, 751 F. App'x 618 (6th Cir. 2018) .................... 7
*Hernden v. Chippewa Valley Sch. Dist.*, No. 24-1842, 2025 WL 2652993 (6th Cir. Sept. 16, 2025)*, cert. denied*, No. 25-712, 146 S.Ct. 1811 (Mem) (Mar. 23, 2026) .................... 12, 17
*Heyerman v. Cnty. of Calhoun*, 680 F.3d 642 (6th Cir. 2012).................... 27
*Hill v. Lappin*, 630 F.3d 468 (6th Cir. 2010).................... 10
*Houston Community College System v. Wilson*, 595 U.S. 468 (2022) ....................passim
*In re Contempt of Dudzinski*, 257 Mich. App. 96 (2003).................... 21
*Jones v. Powell*, 462 Mich. 329; 612 N.W.2d 423 (2000).................... 26
*Kentucky v. Graham*, 473 U.S. 159 (1985) .................... 27

*Kesterson v. Kent State Univ.*, 967 F.3d 519 (6th Cir. 2020) .................... 23
*Kleis v. City of Becker*, No. 16-1005, 2016 WL 4007573 (D. Minn. July 26, 2016) .................... 15
*Kovalchuk v. City of Decherd, TN*, 95 F.4th 1035 (6th Cir. 2024) .................... 28
*Kubala v. Smith*, 984 F.3d 1132 (6th Cir. 2021) .................... 10
*Laird v. Tatum*, 408 U.S. 1 (1972) .................... 17
*LaPorte v. Escanaba Area Pub. Schs.*, 51 Mich. App. 305 (1974) .................... 21
*Laster v. City of Kalamazoo*, 746 F.3d 714 (6th Cir. 2014) .................... 7
*Leonard v. Robinson*, 477 F.3d 347 (6th Cir. 2007) .................... 19
*Lothamer Tax Resolution, Inc. v. Kimmel*, No. 1:25-cv-579, 2025 WL 2490380 (W.D. Mich. Aug. 29, 2025) .................... 23
*Martinez v. Wayne Cnty.*, 142 F.4th 828 (6th Cir. 2025) .................... 27
*Mattox v. City of Forest Park,* 183 F.3d 515 (6th Cir. 1999) .................... 11
*Mezibov v. Allen*, 411 F.3d 712 (6th Cir. 2005) .................... 10
*Mich. Open Carry, Inc. v. Clio Area Sch. Dist.*, 897 N.W.2d 748 (Mich. Ct. App. 2016) .................... 29
*Monell v. Dep't of Social Services of City of NY*, 436 U.S. 658 (1978) .................... 27
*Nalepa v. Plymouth-Canton Cmty. Sch. Dist.*, 207 Mich. App. 580 (1994) .................... 30
*Nawrocki v. Macomb C. Rd. Comm'n*, 463 Mich. 143 (2000) .................... 30
*Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117 (2011) .................... 9, 22
*Novak v. City of Parma*, 932 F.3d 421 (6th Cir. 2019) .................... 23
Perkins v. Township of Clayton, 411 F. App'x 810 (6th Cir. 2011) .................... 14
Phelan v. Laramie Cnty. Comm. Coll. Bd. of Trustees, 235 F.3d 1243 (10th Cir. 2000) .................... 16
*Phillips v. Butterball Farms Co., Inc.*, 448 Mich. 239 (1995) .................... 29
*Posthumus v. Bd. of Educ. of Mona Shores Pub. Schs.*, 380 F. Supp. 2d 891 (W.D. Mich. 2005) .................... 25
*Rudd v. City of Norton Shores, Mich.*, 977 F.3d 503 (6th Cir. 2020) .................... 10
*Sensabaugh v. Halliburton*, 937 F.3d 621 (6th Cir. 2019) .................... 19, 21
*Shehee v. Grimes*, 39 F. App'x 127 (6th Cir. 2002) .................... 19
*Shields v. Charter Twp. of Comstock*, 617 F. Supp. 2d 606 (W.D. Mich. 2009) .................... 9, 15
*Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019) .................... 17
*Speet v. Schuette*, 726 F.3d 867 (6th Cir. 2013) .................... 25, 26
*Stridiron v. Newburgh Enlarged City Sch. Dist.*, No. 20-CV-6823, 2023 WL 5586680 (S.D.N.Y. Aug. 29, 2023) .................... 15
*Suarez Corp. Indus. v. McGraw*, 202 F.3d 676 (4th Cir. 2000) .................... 11
*Temple v. Lower Elkhorn Nat. Res. Dist.*, No. 4:23-CV-3198, 2023 WL 8934916 (D. Neb. Dec. 27, 2023) .................... 15
*Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) .................... 19
*TN Ed. Ass'n v. Reynolds*, 732 F. Supp. 3d 783 (M.D. Tenn. 2024) .................... 22
*United States v. Koubriti*, 307 F. Supp. 2d 891 (E.D. Mich. 2004) .................... 24

*United States v. Williams*, 553 U.S. 285 (2008) .......... 24
*Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392 (6th Cir. 2010) .......... 27
*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982) .......... 24
*Virginia v. Hicks*, 539 U.S. 113 (2003) .......... 25
*Waters v. Churchill*, 511 U.S. 661 (1994) .......... 22
*Weisbarth v. Geauga Park Dist.*, 499 F.3d 538 (6th Cir. 2007) .......... 8
*Whiting v. City of Athens*, 699 F. Supp. 3d 652 (E.D. Tenn. 2023) .......... 18
*Williams v. Addison Cmty. Schs.*, No. 2:22-cv-12742, 2025 WL 4477505 (E.D. Mich. Jan. 31, 2025) .......... 13
*Williams v. CitiMortgage, Inc.*, 498 F. App'x 532 (6th Cir. 2012) .......... 6, 20
*Wurzelbacher v. Jones-Kelley*, 675 F.3d 580 (6th Cir. 2012) .......... 10, 18
*Yoder v. Univ. of Louisville*, 526 F. App'x 537 (6th Cir. 2013) .......... 25
*Zilich v. Longo*, 34 F.3d 359 (6th Cir. 1994) .......... 15
*Zutz v. Nelson*, 601 F.3d 842 (8th Cir. 2010) .......... 18

**Statutes**

20 U.S.C. § 1232g .......... 22
42 U.S.C. § 1983 .......... 27
*Maskery v. Bd. of Regents of Univ. of Mich.*, 468 Mich. 609 (2003) .......... 30
MCL 15.243 .......... 22
MCL 15.262 .......... 4
MCL 15.267 .......... 22
MCL 15.268 .......... 22
MCL 15.269 .......... 5
MCL 380.11a .......... 16, 21, 28, 29
MCL 691.1402 .......... 30
MCL 691.1405 .......... 30
MCL 691.1406 .......... 30
MCL 691.1407 .......... 30
MCL 691.1413 .......... 30
MCL 691.1417 .......... 30

**Rules**

Fed. R. Civ. P. 12(c) .......... 5
FRE 201 .......... 5

## STATEMENT OF ISSUES PRESENTED AND MOST CONTROLLING AUTHORITY

**Issue One**: Should this Court dismiss Plaintiff's First Amendment retaliation claim (Count V), where Plaintiff's unauthorized disclosure of a confidential briefing obtained through her office was not protected citizen speech; the Board's censure resolution is its own protected speech and, together with the temporary reassignment of internal committee and liaison roles, is not an actionable adverse action; the Complaint pleads no objective chill—and Plaintiff's own pleaded conduct refutes any chill; and the Complaint's own exhibits identify the non-retaliatory basis for the Board's action? **YES.**

**Most Controlling Authority:**

- *Houston Community College System v. Wilson*, 595 U.S. 468, 478–79 (2022) (a board's censure of an elected official is "a form of speech by elected representatives" and does not "qualify as a materially adverse action")
- *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) (statements made pursuant to official duties are not made "as citizens for First Amendment purposes")
- *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) (allegations of a subjective "chill" are "not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm")
- *Hernden v. Chippewa Valley Sch. Dist.*, No. 24-1842, 2025 WL 2652993, at *6–7 (6th Cir. Sept. 16, 2025) (affirming dismissal of retaliation claim against school-board members where the plaintiff did "not allege even a single tangible consequence" and "allegations of a speculative or subjective harm do not establish a First Amendment retaliation claim")

**Issue Two**: Should this Court dismiss Plaintiff's facial and as-applied constitutional challenges to Bylaw 1001 (Counts I and II), where the bylaw is a code of ethics governing the official conduct of seven Board members adopted under express statutory authority; it imposes no legal impediment to speech and is therefore not a

prior restraint; it provides fair notice—particularly to a member on actual, personal notice that her disclosure was unauthorized; and it does not prohibit a substantial amount of protected speech judged in relation to its plainly legitimate sweep? **YES.**

**Most Controlling Authority:**

- *Alexander v. United States*, 509 U.S. 544, 550–51 (1993) (a prior restraint prohibits communications before they occur and must impose a "legal impediment" on speech)
- *United States v. Williams*, 553 U.S. 285, 304 (2008) (a rule is vague only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement")
- *Virginia v. Hicks*, 539 U.S. 113, 118–20 (2003) (an overbreadth challenger must show the rule prohibits a "substantial" amount of protected speech "judged in relation to [its] plainly legitimate sweep")
- *In re Contempt of Dudzinski*, 257 Mich. App. 96, 100 (2003) ("[t]he rights of free speech under the Michigan and federal constitutions are conterminous")

**Issue Three**: Should this Court dismiss Plaintiff's claims against the District and individual Board members where there is no underlying constitutional violation, and the only policy the Complaint identifies, Bylaw 1001, is facially lawful and was not the "moving force" behind any constitutional injury? **YES.**

**Most Controlling Authority:**

- *Monell v. Dep't of Social Services of City of NY*, 436 U.S. 658, 691, 694 (1978) (a municipality is not vicariously liable under § 1983; liability attaches only where execution of a municipal policy or custom inflicts the injury)
- *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (an official-capacity suit is "only another way of pleading an action against an entity of which an officer is an agent")
- *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (a municipality cannot be liable under § 1983 absent an underlying constitutional violation by its officers)

- *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997) (where the identified policy is facially lawful, a plaintiff must plead "deliberate indifference" to the "known or obvious consequences" of constitutional violations)

**Issue Four**: Should this Court dismiss Plaintiff's state-law claims (Counts III and IV), where MCL 380.11a broadly authorizes the Board to adopt bylaws and to exercise powers implied by, or incidental to, its express powers—and Plaintiff identifies no express statutory prohibition the bylaw violates—and where governmental immunity bars Count IV's public-policy claim to the extent it sounds in tort? **YES.**

**Most Controlling Authority:**

- MCL 380.11a(3), (6) (authorizing school districts to exercise powers "implied or incident to" express powers and to adopt bylaws governing "any other matter related to effective and efficient functioning of the board")
- *Mich. Open Carry, Inc. v. Clio Area Sch. Dist.*, 318 Mich. App. 356 (2016) (reading the School Code to confer broad self-governance authority on school boards)
- MCL 691.1407(1) (a governmental agency "is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function")
- *Nawrocki v. Macomb Cnty. Rd. Comm'n*, 463 Mich. 143, 156 (2000) (governmental immunity extends to all governmental agencies and applies to all tort liability arising from the exercise of a governmental function)

## STATEMENT OF FACTS

### 1. The Parties

Plaintiff Carol Beth Litkouhi ("Plaintiff" or "Litkouhi") is a member of the Rochester Community School District (the "District") Board of Education (the "Board") (ECF No. 1-1, PageID.6 ¶ 1). The individual defendants, Michelle Bueltel, Jessica Gupta, Julie Alspach, Jayson Blake, and Barb Anness, are all elected members of the Board, and each is named as a defendant "in [their] official capacity only." (Id., PageID.6–7 ¶¶ 4–8). Plaintiff also named the District as a defendant.

### 2. The Bylaw

Plaintiff alleges that, on May 6, 2024, the Board adopted a new bylaw containing a "Code of Ethics." The bylaw provides that each Board member will be asked to acknowledge and sign a Code of Ethics. (Id., PageID.8 ¶ 13; id., Ex. A, PageID.22). Exhibit A to the Complaint reproduces only an excerpt of Bylaw 1001.[1]

Plaintiff further alleges that the Code of Ethics asked Board members to agree not to take action that "might compromise the Board or administration" or "share any document or information that has not already been shared by the District, including but not limited to confidential or privileged information." (Id.). The Code does not impose any penalties or other consequences for a Board member who agrees to be bound by it but nevertheless discloses such information. Plaintiff, therefore, has not alleged that the

[1] Because the Complaint quotes the bylaw and places it at the center of every count, the Court may consider the complete bylaw, which is attached to this motion as **Exhibit 1**. *Courser v. Mich. House of Representatives,* 831 F. App'x 161, 169 (6th Cir. 2020).

Code restricts speech through any enforceable sanction. The complete bylaw confirms the point — and more. Its separate Confidentiality provision explains why the Board asks its members for discretion: "Board members will receive information that is not available to the general public," including closed-session information, and members agree not to share undisclosed information "without the prior authorization of the Board or as may be required by law." (Ex. 1, p. 3). The Code of Ethics likewise asks each member to "encourage and respect the free expression of opinion by my fellow Board members." (Ex. 1, ¶ 6). Far from imposing an unbounded gag, the bylaw expressly contemplates authorized disclosure, disclosure required by law, and the free expression of opinion within the Board.

**3. <u>Litkouhi's Sharing of Confidential Information</u>**

On October 8, 2025, the District Superintendent invited Plaintiff and another board member to a meeting in which he briefed them on a proposed countywide enhancement millage. (ECF No. 1-1, PageID.9 ¶ 14). Plaintiff was provided with an informational packet about the millage, including information on the approval and passage process. (Id. ¶¶ 16–17; id., Ex. B, PageID.24–37). The Board packet stated that the District "believes in empowering the community to make informed decisions" and endeavored to "ensure[] democratic participation and transparency." (Id.; ECF No. 1-1, PageID.9 ¶ 18). Should local school districts individually adopt a resolution to pursue it, the millage would be placed on the ballot for a public vote on August 4, 2026. (Id., Ex. B, PageID.24).

By Plaintiff's own account, the confidentiality request served a modest purpose: she was asked to hold public comment until each Oakland County school board had considered the matter for its own community, because — as she reports being told — "[w]e shouldn't influence other districts." (Id., Ex. C, PageID.39). The Superintendent accordingly asked Plaintiff and the other Board member not to publicly discuss the millage plan just yet. (Id., PageID.9 ¶ 15). Plaintiff disregarded the request. On October 30, 2025, Plaintiff published an opinion article in The Detroit News that discussed the proposed millage and the Superintendent's request to keep the millage information confidential. (Id., PageID.9 ¶ 21; id., Ex. C, PageID.38–40). Importantly, in this article, Plaintiff clearly labels herself as a Trustee on the District Board — and voices her positions in that role: the millage would generate revenue for "Rochester (where I serve on the board)." (Id., Ex. C, PageID.38–40). The Board's censure resolution later pointed out that the article presented District information "in a manner that was incomplete, misleading, and harmful to the reputation of the District and its leadership." (Id., Ex. D, PageID.41).

**4. <u>The Censure</u>**

Following the publication of Plaintiff's article, the Board introduced a resolution to censure Plaintiff. (Id., PageID.10 ¶ 22; id., Ex. D, PageID.41). On November 10, 2025, the resolution was voted on, and all Board members who are named as defendants in this lawsuit voted for the censure; the resolution passed 5–2 at a public meeting, with Plaintiff herself participating and voting against it. (Id. ¶¶ 22–23; Ex. 2, Nov. 10, 2025

Minutes § 9.6). This censure states that Plaintiff published a Detroit News opinion piece that referenced "confidential information shared by the Superintendent," "presenting it publicly in a manner that was incomplete, misleading, and harmful to the reputation of the District and its leadership," and "potentially fiscally harmful to the District and other Oakland County school districts". (Id., Ex. D, PageID.41).

In addition to the censure, Plaintiff alleges she was removed from committees and liaison roles for one calendar year. Plaintiff's Complaint does not establish what benefits, if any, she lost or may lose by being removed from a committee. The complete bylaw supplies the answer: Board committees exist "to gather information for the Board," consist of no more than three members, and are "appointed by the Board President" in the President's discretion. (Ex. 1, p. 4). Committee membership confers no independent authority, because "[t]he Board acts as a whole, and only at properly convened Board meetings." (ECF No. 1-1, Ex. A, PageID.22). The Open Meetings Act ("OMA") also prohibits committees from exercising any binding authority on behalf of a school district, making the positions ceremonial. See MCL 15.262.

Plaintiff, however, was not removed from the Board. Plaintiff does not allege that she was denied access to any information that Board members would receive. She was not restricted from participating in open meetings or closed sessions of the Board. Plaintiff was not prevented from engaging in public debate during Board meetings. Plaintiff was not prohibited from participating in public comment as a citizen during Board meetings.

The public record confirms that the censure changed none of this. The Board's meeting minutes are public records that the OMA requires the District to keep and make available, MCL 15.269, and the Court may consider them on this motion. *Courser*, 831 F. App'x at 169; FRE 201. Those minutes show that, in the months since the censure, Plaintiff has attended every regular and special Board meeting; made and supported motions; cast votes — including dissents and abstentions; raised points of order; and reported constituent communications to the Board. (Ex. 2).[2] They record her among the citizens appearing during the public comment portion of meetings. (Id. at Minutes of Feb. 9, Mar. 9, Mar. 23, Apr. 13 & May 18, 2026). They show her continuing to press the very views underlying this lawsuit — demanding at one meeting an explanation of "why her proposed communication policy was rejected," and observing at another, by point of order, that "speech can't be stopped based on what it said." (Id. at Minutes of Apr. 13 & May 4, 2026). And at the Board's January 12, 2026 organizational meeting, Plaintiff accepted nominations for, and ran for, Board President and Vice President. (Id. at Minutes of Jan. 12, 2026). The public record thus demonstrates that Plaintiff's speech and her participation in Board governance have continued without interruption.

## LEGAL STANDARD

Under Fed. R. Civ. P. 12(c), a court must "construe the complaint in the light

[2] The Board minutes for meetings held on June 8, 2026 and June 22, 2026 are not yet publicly available and are not included.

most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). "To survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016).

When a Court is presented with a Rule 12(c) motion, it may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case[,] and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Courser*, 831 F. App'x at 169; *see Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) (if document referenced in the complaint contradicts the factual allegations contained in the complaint, then the document "trumps the allegations" and renders the claim implausible).

## LAW AND ARGUMENT

### I. PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM FAILS AS A MATTER OF LAW.

To prevail on a First Amendment retaliation claim, Plaintiff "must demonstrate three elements '(1) [she] engaged in constitutionally protected conduct; (2) an adverse action was taken against [her] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least

in part by [her] protected conduct.'" *Henderson v. City of Flint, Michigan*, 751 F. App'x 618, 622 (6th Cir. 2018) (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012)). "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state…a claim under § 1983.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation modified).

As a matter of law, Plaintiff's retaliation claim does not present a cognizable injury because: (1) the conduct for which Plaintiff was censured — the unauthorized disclosure of information obtained through her office — was not protected speech; (2) the censure resolution is the Board's own protected speech and, standing alone, is not an adverse action under *Houston Community College System v. Wilson*, 595 U.S. 468 (2022); (3) the temporary reassignment of internal committee and liaison roles is a de minimis act of internal governance that deprived Plaintiff of no right or privilege of her office; and (4) the Complaint pleads neither an objective nor even a subjective chill — and no facts plausibly connecting Plaintiff's protected expression, as opposed to her admitted breach of the Board's ethics bylaw, to the Board's action.

**a. The Absence of Any Protected Speech Bars Plaintiff's Claim.**

The first element requires Plaintiff to show that she was "engaged in constitutionally protected speech or conduct." *Laster v. City of Kalamazoo*, 746 F.3d 714, 733 (6th Cir. 2014). When the speaker holds public office, the analysis differs from that applied to the private citizen: "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment

purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). To claim the First Amendment's protection, the speaker "(1) must have spoken 'as a citizen,' and (2) must have 'address[ed] matters of public concern.'" *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 542 (6th Cir. 2007) (citations omitted). Courts in this Circuit apply the "same basic analysis" where the parties are elected officials — "co-equal 'apex players' who report to the citizens, not each other." *Aquilina v. Wrigglesworth*, 298 F. Supp. 3d 1110, 1115 (W.D. Mich. 2018), aff'd sub nom. *Aquilina v. Wriggelsworth*, 759 F. App'x 340 (6th Cir. 2018); *see Hartman v. Register*, No. 1:06-CV-33, 2007 WL 915193, at *6 (S.D. Ohio Mar. 26, 2007) ("The distinction between the public employee in *Garcetti* and an elected official . . . is inconsequential").

Whether a speaker spoke as a citizen or as an official is a question of law for the Court, determined by the content, audience, setting, and impetus of the speech. *Aquilina*, 298 F. Supp. 3d at 1114–15. Each factor points the same way here. The content of the op-ed was drawn from a nonpublic briefing packet Plaintiff received at a private meeting to which she was invited because she is a trustee. (ECF No. 1-1, PageID.9 ¶¶ 14–17; id., Ex. B, PageID.24–37). Bylaw 1001 itself recognizes the special position she occupied: "Board members will receive information that is not available to the general public." (Ex. 1, p. 3). The op-ed identified her as "a trustee on the Rochester Community Schools Board of Education". (Id., Ex. C, PageID.38–40). And her stated impetus was her office: she pressed to share the proposal because, in her words, she

would "like to hear from my constituents." (Id.). In *Aquilina*, a judge who released to the press a courtroom video that she "had access to . . . only by virtue of her official position" did not speak as a citizen, and her claim failed at the threshold. 298 F. Supp. 3d at 1115. The same is true here: Plaintiff took information entrusted to her only by virtue of her seat and published it. That is the conduct of an office.

That conclusion accords with the settled understanding that an elected member's exercise of her official role is subject to the body's internal governance, not the member's personal First Amendment rights. *See Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 125–27 (2011) (restrictions on how legislators exercise official functions do not restrict the legislator's personal First Amendment rights, because official power "is not personal to the legislator but belongs to the people"); *Shields v. Charter Twp. of Comstock*, 617 F. Supp. 2d 606, 617 (W.D. Mich. 2009) ("As an elected member of the Township Board, Plaintiff must submit to the Board's power to discipline its own members for their 'legislative speech'").

To be clear, Defendants do not contend that an elected official surrenders her right to speak to the public as a citizen on matters of public concern — she does not. But the Complaint does not plead that Plaintiff was censured for citizen commentary. Its own exhibits show she was censured for the "unauthorized disclosure and misrepresentation of confidential District information" obtained through her office. (ECF No. 1-1, Ex. D, PageID.41). The component of the op-ed that drew the Board's response — the disclosure of the contents of a nonpublic briefing — is precisely the

component that *Garcetti* and *Aquilina* place outside the First Amendment's protection. And to the extent any portion of the op-ed amounted to protected citizen commentary, the claim still fails at the second and third elements, as set forth below.

**b. The Absence of Any Adverse Action Bars Plaintiff's Claim.**

Even if Plaintiff was engaged in protected speech, she did not face any adverse action for such speech. The Complaint alleges no chill at all, not even a subjective one.

The Sixth Circuit "ha[s] described an adverse action as 'one that is *capable* of deterring a person of ordinary firmness' from exercising the constitutional right in question." *Rudd v. City of Norton Shores, Mich.*, 977 F.3d 503, 514 (6th Cir. 2020) (quoting *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010)) (emphasis in original). The inquiry is objective, and the analysis "must be tailored to the circumstances." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010). To be actionable, an adverse action must generate more than "de minimis negative consequences," *Kubala v. Smith*, 984 F.3d 1132, 1139 (6th Cir. 2021), and "[i]nconsequential actions are . . . properly dismissed as a matter of law," *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 584 (6th Cir. 2012); *see Mezibov v. Allen*, 411 F.3d 712, 721 (6th Cir. 2005) ("[S]ince § 1983 is a tort statute, we must be careful to ensure that real injury is involved, lest we 'trivialize the First Amendment'").

Moreover, elected officials are held to a higher standard. The Supreme Court has articulated that elected representatives are expected to "shoulder a degree of criticism about their public service from their constituents and their peers—and to continue exercising their free speech rights when the criticism comes." *Wilson,* 595 U.S. at 478;

*see also Mattox v. City of Forest Park,* 183 F.3d 515, 522 (6th Cir. 1999) ("Public officials may need to have thicker skin than the ordinary citizen when it comes to attacks on their views").

Ultimately, the Supreme Court has held that a board's censure does not "qualify as a materially adverse action[,]" as a censure is "a form of speech by elected representatives" that concerns "the public conduct of another elected representative." *Id.* at 479; *see also Dillaplain v. Xenia Cmty. Schs. Bd. of Educ.,* No. 3:13-CV-104, 2013 WL 5724512 (S.D. Ohio Oct. 21, 2013) (holding that a school board's speech in expressing its opinion and publicly censuring a member "is not conduct rising to a level that would deter a person of ordinary firmness from continuing to engage protected speech").

### *i. The Censure Resolution Is the Board's Own Protected Speech—and Words Alone Are Not an Adverse Action.*

Where the alleged retaliation is itself speech by public officials, the officials' own First Amendment rights come into play. "Courts have not been receptive to retaliation claims arising out of government speech," because "[n]ot only do public officials have free speech rights, but they also have an obligation to speak out about matters of public concern." *Goldstein v. Galvin*, 719 F.3d 16, 30 (1st Cir. 2013). Thus, absent "a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow," an official's critical speech "does not adversely affect a citizen's First Amendment rights." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000). That is all the censure resolution is: the Board's collective expression of

disapproval — "a form of speech by elected representatives" concerning "the public conduct of another elected representative." *Wilson*, 595 U.S. at 479. It levies no fine, creates no enforcement mechanism, and threatens no sanction.

Courts in this district and the Sixth Circuit have applied these principles to reject retaliation claims against school-board members on facts far more aggressive than a resolution of disapproval. In *Hernden v. Chippewa Valley Schools*, board members responded to a vocal critic by emailing her employer — a police chief — and by lodging a complaint about her with the U.S. Department of Justice. The district court dismissed the claims, and the Sixth Circuit affirmed, emphasizing that the plaintiff "d[id] not allege even a single tangible consequence" of the referral and that "allegations of a speculative or subjective harm do not establish a First Amendment retaliation claim." *Hernden v. Chippewa Valley Sch. Dist.*, No. 24-1842, 2025 WL 2652993, at *6-7 (6th Cir. Sept. 16, 2025), *cert. denied*, No. 25-712, 146 S.Ct. 1811 (Mem) (Mar. 23, 2026) (citing *Gordon v. Warren Consol. Bd. of Educ.*, 706 F.2d 778, 781 (6th Cir. 1983)). If reporting a critic to her employer and to federal law enforcement is not an adverse action, then a resolution expressing the Board's institutional disapproval assuredly is not.

#### *ii. The One-Year Reassignment of Committee and Liaison Roles Does Not Convert the Board's Speech Into an Adverse Action.*

Governmental bodies possess broad discretion to manage their internal affairs, including the power to censure their own members. *Wilson*, 595 U.S. at 475. The *Wilson* Court unanimously held that a community-college board's censure of an elected trustee

was not a materially adverse action: it "did not prevent [the plaintiff] from doing his job" and did not "deny him any privilege of office." *Id.* at 479. Notably, the board in *Wilson* went further than the Board here — it also declared the trustee ineligible for officer positions, denied him reimbursement for travel, and required board approval before he could access board funds. *Id.* at 472.

The caselaw of this Circuit confirms that internal board discipline of this kind deprives a member of nothing she holds by virtue of her election. In *Williams v. Addison Community Schools*, a Michigan school board censured its president and removed him from that office after finding, among other things, that he had breached confidentiality. The district court rejected his constitutional claims, explaining that "there is no protected 'property' interest in holding a public office" and that an internal board office "is merely a function of the original position afforded to [the member] as an elected public official." *Williams v. Addison Cmty. Schs.*, No. 2:22-cv-12742, 2025 WL 4477505, at *4 (E.D. Mich. Jan. 31, 2025) (citing *Fouts v. Warren City Council*, 97 F.4th 459, 469 (6th Cir. 2024)), appeal decided on other grounds, 168 F.4th 791 (6th Cir. 2026) (addressing only supplemental jurisdiction over a state constitutional claim). Committee and liaison assignments stand on the same footing: they are internal functions of the Board, allocated by the Board, and their temporary reassignment takes nothing from the elected seat itself.[3]

[3] Additionally, participation on a Board committee does not hold any material authority. Under the OMA, Board committees have no authority to take official action. See MCL 15.262(d). Rather, Board

*Perkins v. Township of Clayton* is to the same effect. After a township treasurer took her criticisms of township officials to the press, the township board convened a censure hearing, a board member filed a mandamus complaint against her, and the township later moved to hold her in contempt. 411 F. App'x 810, 811–12 (6th Cir. 2011). The Sixth Circuit held that "[a]lthough these events were unquestionably unpleasant for Perkins and harmed her, . . . none would dissuade a public official of ordinary firmness from exercising his or her First Amendment rights"; a public official must "tolerate more significant actions taken in response to her exercise of First Amendment rights than an average citizen would before actions are considered adverse." *Id.* at 815–16. The censure and internal reassignment here are far milder than the litigation campaign *Perkins* found non-actionable.

Other circuits agree that discipline of this kind is part of ordinary politics, not actionable retaliation. In *Blair v. Bethel School District*, the Ninth Circuit held that a school board's removal of a member from his position as vice president — in express response to his critical speech — was "a minor indignity" that would not chill a person of ordinary firmness in an elected official's position: "the First Amendment does not succor casualties of the regular functioning of the political process," and "more is fair

committees may only study issues and make recommendations to the full Board, but they may not take official action. OAG, 1997-1998, No. 6935, p. 18 (April 2, 1997); OAG No. 5183 at p. 40. All binding action must be taken by a quorum of the Board in compliance with the OMA. *Schmiedicke v. Clare Sch. Bd.*, 228 Mich. App. 259, 261, 263-264 (1998); *Morrison v. East Lansing*, 255 Mich. App. 505 (2003); OAG, 1997-1998, No. 7000, p. 197 (December 1, 1998).

in electoral politics than in other contexts." 608 F.3d 540, 543–46 (9th Cir. 2010). The one-year reassignment of committee and liaison roles here is a lesser measure than the officer removals held non-actionable in *Blair* and *Williams*. *See e.g. Temple v. Lower Elkhorn Nat. Res. Dist.*, No. 4:23-CV-3198, 2023 WL 8934916, at *5–6 (D. Neb. Dec. 27, 2023) (removal from committee assignments "not a materially adverse action" because "it is a common sanction employed by political bodies" that "does not infringe on the benefits and privileges of [the] office"); *Stridiron v. Newburgh Enlarged City Sch. Dist.*, No. 20-CV-6823, 2023 WL 5586680, at *8–9 (S.D.N.Y. Aug. 29, 2023) (school-board member's removal from policy committee not an adverse action); *Kleis v. City of Becker*, No. 16-1005, 2016 WL 4007573, at *2–3 (D. Minn. July 26, 2016) (censure with one-year committee removal and contact restrictions not a First Amendment violation).

Nor may a plaintiff "transform [a] political defeat into a civil damages action merely because some members of the Board may have disagreed" with her. *Shields*, 617 F. Supp. 2d at 616. "[A] legislative body does not violate the First Amendment when some members cast their votes in opposition to other members out of political spite or for partisan, political or ideological reasons," *Zilich v. Longo*, 34 F.3d 359, 363 (6th Cir. 1994). Elected members of legislative boards "must submit to the Board's power to discipline its own members for their 'legislative speech.'" *Shields*, 617 F. Supp. 2d at 617. Otherwise, an elected official would be able to "hold captive a legislative body and force his or her political adversaries to remain silent." *Id.*

The Tenth Circuit's decision in *Phelan v. Laramie Cnty. Comm. Coll. Bd. of Trustees*

is directly analogous. The board there censured a trustee for violating its ethics policy after she ran a newspaper ad — as "trustee" — urging the public to vote against a five-mill tax. 235 F.3d 1243, 1245 (10th Cir. 2000). The censure was "clearly not a penalty": it did not "prevent her from performing her official duties or restrict her opportunities to speak, such as her right to vote as a Board member, her ability to speak before the Board, or her ability to speak to the public," and the trustee "remained free to express her views publicly and to criticize the ethics policy and the Board's censure." *Id.* at 1248.

That consensus disposes of Plaintiff's claim. Plaintiff was censured and removed from committee and liaison roles, and she does not identify any right or entitlement to these assignments. Those roles are not creatures of statute; they exist, if at all, by the Board's internal allocation under bylaws the Revised School Code authorizes it to adopt. MCL 380.11a(6). The complete bylaw confirms it: Board committees exist "to gather information for the Board," may not exceed three members, and are "appointed by the Board President" in the President's discretion. (Ex. 1, p. 4). And on the Complaint's own exhibits, committee membership carries no governmental power whose loss could injure Plaintiff: the Board's bylaws provide that "[a]n individual Board member lacks independent authority" and that "[t]he Board acts as a whole, and only at properly convened Board meetings." (ECF No. 1-1, Ex. A, PageID.22).

Indeed, the Complaint nowhere alleges that Litkouhi was removed from the Board, deprived of her vote, barred from meetings, docked compensation, or restricted in communicating with her constituents; on its face, the censure resolution reaches only

committee and liaison assignments for one year. (ECF No. 1-1, Ex. D, PageID.41). And the Complaint itself demonstrates that the censure has not silenced Plaintiff, who promptly filed this lawsuit challenging the Board's action. The Board's public minutes bear this out: since the censure, Plaintiff has attended every Board meeting, made and supported motions, cast votes — including dissents and abstentions — and stood for election as Board President and Vice President at the January 2026 organizational meeting. (Ex. 2; *see* Statement of Facts, *supra*).

**c. Plaintiff Pleads, at Most, a Subjective Chill—Which Is Not Actionable—and Her Own Conduct Refutes Any Chill.**

Independent of the adverse-action element, Plaintiff must allege an objective injury to her speech. "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972). The Sixth Circuit applied that rule to a Michigan school board in *Gordon v. Warren Consolidated Board of Education*: where "there is no objective chill to one's speech, allegations of a speculative or subjective harm do not establish a First Amendment retaliation claim." *Hernden*, 2025 WL 2652993, at *6 (citing *Gordon*, 706 F.2d at 781). Government action gives rise to a cognizable injury only when it is "regulatory, proscriptive, or compulsory in nature, and the complainant is either presently or prospectively subject to the regulations, proscriptions, or compulsions that he is challenging." *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 764–65 (6th Cir. 2019) (quoting *Laird*, 408 U.S. at 11) (cleaned up). Consistent with these principles, the Eighth

Circuit has expressed "doubts" that a board's refusal to appoint one of its members to subcommittees could "chill a person of ordinary firmness," *Zutz v. Nelson*, 601 F.3d 842, 851 (8th Cir. 2010), and courts uniformly conclude that an elected official is not chilled by removal from internal leadership or committee roles. *See* cases cited *supra*.

The Complaint does not allege even a subjective chill. It identifies no speech Plaintiff has refrained from, no forum she has avoided, and no statement she has tempered. What it pleads is the opposite. Told by the Superintendent that the millage briefing should be kept confidential, Plaintiff announced on the spot that she "planned to discuss the matter with the public." (ECF No. 1-1, PageID.9 ¶ 19). She then published her views in The Detroit News. (Id. ¶ 21; id., Ex. C, PageID.38–40). And after the censure, she promptly filed this lawsuit. The public record forecloses any contrary inference: the Board's minutes record Plaintiff speaking during the public-comment portion of meeting after meeting since the censure, pressing "her proposed communication policy," and objecting — by point of order — that "speech can't be stopped based on what it said." (Ex. 2; see Statement of Facts, *supra*). A plaintiff's own undeterred conduct "support[s] the conclusion that a person of ordinary firmness would not be deterred or chilled." *Whiting v. City of Athens*, 699 F. Supp. 3d 652, 660–61 (E.D. Tenn. 2023); *see Wurzelbacher*, 675 F.3d at 585 (no-adverse-action conclusion "supported by the fact that [the plaintiff] was not deterred or chilled in the exercise of his First Amendment rights"). Nor does the censure resolution purport to restrain any future speech: it reassigns internal roles and "reaffirms" the Board's ethical expectations

— nothing in it is regulatory, proscriptive, or compulsory as to Plaintiff's expression. (ECF No. 1-1, Ex. D, PageID.41). Plaintiff remains free to say anything, anywhere, to anyone — and by all indications pleaded in her own Complaint, she has. Consequently, Plaintiff's First Amendment retaliation claim fails.

**d. Plaintiff Does Not Plead a Causal Connection Between Protected Speech and an Adverse Action.**

A plaintiff must plead factual allegations that could plausibly support a finding that there is a causal connection between the constitutionally protected conduct and the adverse action. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Simply alleging that the defendants acted in retaliation for constitutionally protected conduct is conclusory and deficient. *See, e.g., Shehee v. Grimes*, 39 F. App'x 127, 129 (6th Cir. 2002) (affirming dismissal of retaliation claim and stating that "conclusory allegations" and "bare allegations of malice on the defendants' part are not enough to establish retaliation claims"). In short, Plaintiff has failed to set out sufficient facts to raise her allegations of retaliation above the speculative level.

To show causation, Plaintiff "must demonstrate that the speech at issue represented a substantial or motivating factor" in the adverse action. *Sensabaugh v. Halliburton*, 937 F.3d 621, 629 (6th Cir. 2019) (citation modified). "A 'motivating factor' is essentially but-for cause[.]" *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007). "Temporal proximity alone is rarely, if ever, sufficient to establish causation" and there "must be other indicia of retaliatory conduct." *Sensabaugh*, 937 F.3d at 630.

In the present case, where there is no adverse action, there can be no causal connection. Plaintiff never experienced any consequence beyond the Board's own expression of disapproval and the temporary reallocation of internal advisory roles — no discipline, no fine, no lost compensation, and no restriction of her vote, her voice at Board meetings, or her communication with her constituents. (ECF No. 1-1, Ex. D, PageID.41).

Moreover, the Complaint's own exhibits identify the actual, non-retaliatory basis for the Board's action: Plaintiff's breach of Bylaw 1001. The resolution censures Plaintiff "for her violation of Board Bylaw 1001 through the unauthorized disclosure and misrepresentation of confidential District information." (ECF No. 1-1, Ex. D, PageID.41). It does not so much as mention Plaintiff's opposition to the millage, and it takes no issue with her viewpoint. What it addresses is conduct: the disclosure of information "shared by the Superintendent that had not been approved for release," presented in a manner the Board found "incomplete" and "misleading." (Id.). Where an exhibit to the complaint supplies the facially legitimate basis for the challenged action, the exhibit "trumps the allegations." *Williams v. CitiMortgage*, 498 F. App'x at 536. Conclusory assertions that the censure "was motivated, at least in part, by the Plaintiff's protected conduct" (ECF No. 1-1, PageID.18 ¶ 88) cannot carry the claim past the pleadings. *Harbin-Bey*, 420 F.3d at 580.

Plaintiff pleads no fact from which retaliatory motive could plausibly be inferred: no Board member who disclosed a confidential briefing without consequence, no

statement by any Defendant targeting her views, nothing but sequence — and "[t]emporal proximity alone is rarely, if ever, sufficient." *Sensabaugh*, 937 F.3d at 630.

## II. BYLAW 1001 IS CONSTITUTIONAL — IT IS NOT A PRIOR RESTRAINT, NOT VAGUE, AND NOT OVERBROAD.

Counts I and II attack Bylaw 1001 itself, alleging that the fourth provision of the Board's Code of Ethics violates the free-speech guarantees of the Michigan and United States Constitutions and is unconstitutionally vague and overbroad. (ECF No. 1-1, PageID.11–12 ¶¶ 30–44). Because "[t]he rights of free speech under the Michigan and federal constitutions are conterminous," a single analysis disposes of both constitutional theories. *In re Contempt of Dudzinski*, 257 Mich. App. 96, 100 (2003); *accord City of Owosso v. Pouillon*, 254 Mich. App. 210, 213–14 (2002); see ECF No. 14, PageID.167–168 (recognizing the same). Each theory fails as a matter of law.

### a. Bylaw 1001 Governs the Official Conduct of Board Members — It Does Not Restrain Private Speech.

Bylaw 1001 is not a speech regulation directed at citizens. It is a code of ethics that each of the District's **seven** Board members "will be asked to acknowledge and sign" (ECF No. 1-1, Ex. A, PageID.22), adopted under express statutory authority to enact bylaws governing "any other matter related to effective and efficient functioning of the board." MCL 380.11a(6). A school board "has the authority to set reasonable regulations governing the operation of the schools," and judicial scrutiny of such rules "is limited to whether they are reasonable." *LaPorte v. Escanaba Area Pub. Schs.*, 51 Mich. App. 305, 308 (1974).

The First Amendment does not treat such internal-governance rules as restraints on a member's private speech. Indeed, Plaintiff's status as a Board member and unprotected speech under *Garcetti* effectively insulate the bylaw from prior restraint, overbreadth, and vagueness analysis. *TN Ed. Ass'n v. Reynolds*, 732 F. Supp. 3d 783, 807 (M.D. Tenn. 2024) ("because the plaintiffs are public employees whose claims involve the performance of their duties, it is not a First Amendment case"). In *Nevada Commission on Ethics v. Carrigan*, the Supreme Court unanimously upheld an ethics rule restricting how legislators exercise their official functions, explaining that official power "is not personal to the legislator but belongs to the people; the legislator has no personal right to it." 564 U.S. at 125–26. And the government acting as manager of its own operations enjoys latitude it lacks as sovereign: it may restrict the speech of those it employs "for the very purpose of effectively achieving its goals." *Waters v. Churchill*, 511 U.S. 661, 675 (1994). The District's interests are concrete: school boards handle information the law itself makes confidential — student records under the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, records exempt from disclosure under FOIA, MCL 15.243, and closed-session matters under the OMA, MCL 15.267(2), 15.268 — and a board that cannot ask its own members to honor confidences cannot function.

**b. Bylaw 1001 Is Not a Prior Restraint.**

Prior restraint involves prohibiting communications before they occur. *Alexander v. United States*, 509 U.S. 544, 550 (1993) (citation omitted). The alleged restraint must

also impose a "legal impediment." *Id.* at 551. This requirement is critical: without a legally enforceable mechanism that forbids speech before it occurs, the prior restraint doctrine is not triggered. *See Lothamer Tax Resolution, Inc. v. Kimmel*, No. 1:25-cv-579, 2025 WL 2490380, *11-12 (W.D. Mich. Aug. 29, 2025). Indeed courts have found that the mere existence of a rule or agreement that limits speech — without a court order or administrative mechanism to enforce it — does not rise to the level of a prior restraint. *See Kesterson v. Kent State Univ.*, 967 F.3d 519, 526 (6th Cir. 2020) (merely telling a student that he could not tell anyone about a sexual assault was not a prior restraint because no sanction was attached to the order); *cf. Novak v. City of Parma*, 932 F.3d 421, 433 (6th Cir. 2019) (police threat to prosecute the plaintiff if he shared his views publicly was such a restraint due to the threat of sanction).

An ethics pledge among the members of a governing body, enforceable by nothing more coercive than the body's own censure — "a form of speech," *Wilson*, 595 U.S. at 479 — is not a prior restraint. The pleading proves the point: no license, order, or sanction stood between Plaintiff and her op-ed. She published it. The only consequences were the Board's counter-speech and an internal reassignment of roles — neither of which, as shown in Argument I, is actionable.

**c. Bylaw 1001 Is Not Unconstitutionally Vague.**

The vagueness doctrine, rooted in due process, asks whether a rule "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."

*United States v. Williams*, 553 U.S. 285, 304 (2008). "[P]erfect clarity and precise guidance have never been required," *id.*, for "we can never expect mathematical certainty from our language." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). And dispositive here: "[o]ne who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982). This Court has determined that orders prohibiting the dissemination of "confidential" information is constitutionally clear and sufficiently narrow. *See United States v. Koubriti*, 307 F. Supp. 2d 891, 898 (E.D. Mich. 2004) ("gag order," precluding parties and their lawyers from disseminating or commenting upon confidential, classified, or sealed information relating to issues under consideration, not unconstitutionally vague or overbroad because other courts, including the Fifth Circuit, found such language sufficiently clear and narrow).

Whatever the outer boundaries of "information that has not already been shared by the District," Plaintiff's pleaded conduct sits at the provision's core: she was briefed privately, expressly asked not to discuss the millage plan publicly, announced that she would do so anyway, and published — acknowledging the confidentiality request in the op-ed itself. (ECF No. 1-1, PageID.9 ¶¶ 14–21; id., Ex. C, PageID.38–40). A member on actual, personal notice that her disclosure was unauthorized cannot claim the bylaw failed to warn her. *See Connally v. Gen. Const. Co.,* 269 U.S. 385, 391 (collecting cases) (where the Supreme Court recognized the fact that, in some instances, laws that might seem vague on first reading can be understood, in context, to be "employ[ing] words

or phrases having a technical or other special meaning, well enough known to enable those within their reach to correctly apply them”). The complete bylaw reinforces the point: its Confidentiality provision permits members to share undisclosed information with “the prior authorization of the Board or as may be required by law.” (Ex. 1, p. 3). A rule that tells members what to do with nonpublic information — and how to obtain authorization to share it — is not standardless.

**d. Bylaw 1001 Is Not Overbroad.**

Overbreadth is “strong medicine” to be employed “sparingly and only as a last resort.” *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). Plaintiff bears the burden of showing that the bylaw prohibits a “substantial” amount of protected speech “judged in relation to [its] plainly legitimate sweep,” *Virginia v. Hicks*, 539 U.S. 113, 118–20 (2003), and “the mere fact that one can conceive of some impermissible applications” is not enough. *Yoder v. Univ. of Louisville*, 526 F. App’x 537, 548 (6th Cir. 2013) (citation omitted); *see Posthumus v. Bd. of Educ. of Mona Shores Pub. Schs.*, 380 F. Supp. 2d 891, 902 (W.D. Mich. 2005) (overbreadth requires a “realistic danger” that the provision “will significantly compromise recognized First Amendment protections of parties not before the court”). To succeed in an overbreadth challenge, therefore, a plaintiff must “demonstrate from the text of the statute and from actual fact that a substantial number of instances exist in which the statute cannot be applied constitutionally.” *Speet v. Schuette*, 726 F.3d 867, 873 (6th Cir. 2013) (citation modified).

No substantial overbreadth is conceivable here. The provision binds **seven**

Board members, and only in the conduct of their office. It does not reach any member of the public, and it leaves every member free to speak as a citizen about anything the District has made public. It is an ethics norm, not a penal statute: its only enforcement mechanism is the Board's own expression of disapproval, which is itself protected speech. *Wilson*, 595 U.S. at 479. A rule of that character and scope poses no "realistic danger" to the speech of "parties not before the court" — and any claimed misapplication, can be addressed as-applied just as Plaintiff's retaliation claim is addressed in Argument I. The complete bylaw narrows any conceivable sweep further still: it permits disclosure with Board authorization or where required by law, and it affirmatively commits every member to "encourage and respect the free expression of opinion" by their colleagues. (Ex. 1, pp. 2–3). Moreover, as required under law, Plaintiff has not identified in her Complaint any other circumstances where this bylaw could restrict speech beyond what the Constitution allows. *See Speet*, 726 F.3d at 873.

Finally, to the extent Counts I and II seek damages for violation of the Michigan Constitution, Michigan law forecloses any such remedy: there is no inferred damages action against municipalities or individual government actors for state constitutional violations. *Jones v. Powell*, 462 Mich. 329, 335–37; 612 N.W.2d 423 (2000).

## III. THE DISTRICT CANNOT BE HELD LIABLE UNDER MONELL.

Count V names the District, and each individual Board member is sued "in [their] official capacity only" (ECF No. 1-1, PageID.6–7 ¶¶ 4–8) — which is "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v.*

*Graham*, 473 U.S. 159, 165 (1985) (citation omitted). Every claim in this case therefore runs against the District itself, and the District may be held liable under 42 U.S.C. § 1983 only on the terms set by *Monell v. Dep't of Social Services of City of NY*, 436 U.S. 658, 691, 694 (1978): not vicariously for the acts of its officers, but only where "a custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation of the plaintiff's constitutional rights." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012) (citation omitted).

**a. No Underlying Constitutional Violation Means No Monell Liability.**

"There can be no liability under *Monell* without an underlying constitutional violation." *Martinez v. Wayne Cnty.*, 142 F.4th 828, 844 (6th Cir. 2025); *accord City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Arguments I and II establish that Plaintiff suffered no First Amendment violation: she pleads no protected citizen speech, no adverse action, no chill, and no causal connection, and Bylaw 1001 is constitutional. With no underlying violation, the claim against the District fails at the threshold.

**b. Plaintiff Identifies No Unconstitutional Policy That Was the "Moving Force" Behind Any Injury.**

Even setting that aside, Plaintiff must identify a municipal policy, connect it to the municipality, and show that her injury was incurred due to its execution. *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 403 (6th Cir. 2010). The only policy the Complaint identifies is Bylaw 1001, and the only execution of that policy is the censure resolution. Argument II establishes that the bylaw is facially constitutional; Argument I establishes

that the censure deprived Plaintiff of no constitutional right. Where the identified policy "is itself facially lawful," a plaintiff must plead that the municipality acted with "deliberate indifference" to the "known or obvious consequences" of constitutional violations. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997) (citation omitted); *see also Kovalchuk v. City of Decherd, TN*, 95 F.4th 1035, 1038 (6th Cir. 2024). The Complaint pleads nothing of the kind — and it could not, because a municipality "cannot exhibit fault rising to the level of deliberate indifference to a constitutional right when that right has not yet been clearly established." *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994–95 (6th Cir. 2017) (citation omitted). Plaintiff's Complaint concedes the point: the Supreme Court "has left unanswered the question of whether a censure accompanied by other penalties such as the removal of committee assignments rises to the level of being an adverse action." (ECF No. 1-1, PageID.18–19 ¶ 89). A Board cannot be deliberately indifferent to a right whose very existence Plaintiff admits is an open question. A censure resolution that is itself protected speech, applied under a bylaw that is itself valid, is not a policy of retaliation; it is ordinary school-board governance.

## IV. PLAINTIFF'S STATE-LAW CLAIMS FAIL: THE SCHOOL CODE AUTHORIZES BYLAW 1001, AND THE PUBLIC-POLICY CLAIM IS BARRED BY GOVERNMENTAL IMMUNITY.

MCL 380.11a was not violated. This Court has already observed that MCL 380.11a "plainly authorizes school boards to adopt bylaws," and that Michigan's courts read the statute to confer broad self-governance authority — including, in certain circumstances, the ability to invoke privilege doctrines over communications. (ECF No.

14, PageID.165–166 (citing *Mich. Open Carry, Inc. v. Clio Area Sch. Dist.*, 897 N.W.2d 748 (Mich. Ct. App. 2016)). The relevant question, as framed by the Court, is not whether the Board complied with the School Code, but how far it may go while remaining consistent with the First Amendment. (Id. at PageID.167).

The text of MCL 380.11a confirms the breadth of the Board's authority. The statute provides that school districts "may exercise a power implied or *incident to* a power expressly stated in this act" and "may exercise a power incidental or appropriate to the performance of a function related to the operation of a public school." MCL 380.11a(3) (emphasis added). It further provides that the enumerated powers "include[], but are not limited to" those specifically identified, making clear that the statute is an affirmative grant of authority rather than a limitation on the Board's powers.

Importantly, Plaintiff has not alleged that the District violated any *express* language in the statute. Plaintiff only alleges that the Michigan School Code did not specifically grant authority to classify information as confidential. But the absence of an express grant of authority is not the same as an express prohibition. Given MCL 380.11a's broad delegation of implied and incidental authority, Plaintiff's argument fails as a matter of law.

Count IV repackages the same theory as a claim that Bylaw 1001 "is void because it contradicts the public policy of the state." (ECF No. 1-1, PageID.14–18 ¶¶ 56–84). To the extent Count IV seeks damages, it sounds in tort and is barred by governmental immunity. *Phillips v. Butterball Farms Co., Inc.*, 448 Mich. 239, 246-247 (1995)*; Berg v.*

*Tittabawassee Twp.*, No. 355404, 2021 WL 6064357, *4 (Mich. Ct. App. Dec. 21, 2021). MCL 691.1407(1) provides that: "[e]xcept as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." It extends to all governmental agencies and applies to all tort liability when the governmental agencies are engaged in the exercise of a government function. *Nawrocki v. Macomb C. Rd. Comm'n*, 463 Mich. 143, 156 (2000). A school district is a governmental agency, and its operations are governmental functions. *Nalepa v. Plymouth-Canton Cmty. Sch. Dist.*, 207 Mich. App. 580, 587 (1994).

The Governmental Tort Liability Act's six narrowly construed exceptions — highway, motor vehicle, public building, proprietary function, governmental hospital, and sewage-system events, MCL 691.1402, .1405, .1406, .1413, .1407(4), .1417 — must be pleaded by the plaintiff, and none applies here. *Maskery v. Bd. of Regents of Univ. of Mich.*, 468 Mich. 609, 613–14 (2003). And to the extent Count IV seeks only a declaration that the bylaw is void, it fails for the reasons stated in Argument II and because the School Code authorizes the bylaw.

## CONCLUSION

For all the reasons stated above, Defendants respectfully request that this Court dismiss Plaintiff's claims against them pursuant to Federal Rule of Civil Procedure 12(c).

/s/KENNETH B. CHAPIE

Dated: July 27, 2026 GIARMARCO, MULLINS & HORTON, PC

## CERTIFICATE OF ELECTRONIC SERVICE

KENNETH B. CHAPIE states that on July 27, 2026 he did serve a copy of **DEFENDANTS MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FEDERAL RULE OF CIVIL PROCUDURE 12(C)** via the United States District Court electronic transmission.

/s/KENNETH B. CHAPIE
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendants
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7048
kchapie@gmhlaw.com
P66148