UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROL BETH LITKOUHI,

Plaintiff,

v.

ROCHESTER COMMUNITY SCHOOL DISTRICT, *et al*,

Defendants.
_______________________________________/

Case No. 2:26-cv-10552-SKD-DRG

Honorable Susan K. DeClercq
Magistrate Judge David R. Grand

DERK A. WILCOX (P66177)
PATRICK J. WRIGHT (P54052)
MACKINAC CENTER LEGAL FOUNDATION
*Attorneys for Plaintiff*
140 West Main Street
Midland, MI 48640
(989) 631-0900
wilcox@mackinac.org

KENNETH B. CHAPIE (P66148)
LINDSAY P. HAZEN (P85861)
GIARMARCO, MULLINS & HORTON, P.C.
*Attorneys for Defendants*
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7048
kchapie@gmhlaw.com
lhazen@gmhlaw.com

**PLAINTIFF'S RESPONSE TO DEFENDANT'S 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS


TABLE OF CONTENTS ........ ii

INDEX OF AUTHORITIES ........ iii

I. STANDARDS FOR A MOTION TO DISMISS ........ 1

II. PLAINTIFF HAS MADE A PRIMA FACIE CASE FOR FIRST AMENDMENT RETALIATION. ........ 2

A. Plaintiff engaged in a constitutionally-protected activity. Her op-ed was the free speech activity of a private individual. ........ 2

1. Plaintiff spoke as a citizen and not as a public official. ........ 2

2. Plaintiff spoke on a matter of public concern. ........ 16

B. The setting of Plaintiff's speech was a public forum. ........ 16

C. Plaintiff's audience was the general public. ........ 17

D. Plaintiff's speech's subject matter was related to public finance. ........ 17

E. Plaintiff has suffered an injury and her claim is not subjective. ........ 17

F. Defendants misstate the law where they say that a censure accompanied by removal from committee assignments is mere speech and is not a prohibited retaliatory action. ........ 23

G. Plaintiff has properly pled that she suffered retaliation for her exercise of free speech. ........ 26

III. PLAINTIFF HAS PLED SUFFICIENT FACTS TO SUSTAIN AND PREVAIL ON CLAIMS OF CONSTITUTIONAL VIOLATIONS BY THE BYLAW. ........ 27

IV. BECAUSE PLAINTIFF HAS VALID CONSTITUTIONAL CLAIMS, *MONELL* APPLIES. ........ 29

CONCLUSION ........ 30

## INDEX OF AUTHORITIES

### Cases


*Alexander v. United States*, 509 U.S. 544 (1993) ....................................................28

*Aquilina v. Wrigglesworth*, 298 F.Supp.3d 1110 (W.D. Mich. 2018) .. 3, 4, 7, 14, 15, 16, 17

*Aquilina v. Wrigglesworth*, 759 Fed.Appx. 340 (6th Cir. 2018)...................................3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................1, 2

*Assoc. of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545 (6th Cir. 2007)…………………………………………………………………………..1

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) …………………………..1, 7

*Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002)...........................................................22

*Berry v. Schmitt*, 688 F.3d 290 (6th Cir. 2012). ........................................................16

*Blackwell v. City of Livonia*, 984 N.W.2d 780 (2021). .............................................12

*Bond v. Floyd*, 385 U.S. 116 (1966).................................................................. 24, 25

*Boulton v. Swanson*, 795 F.3d 526 (6th Cir. 2015) .....................................................2

*Connick v. Myers*, 461 U.S. 138 (1983)........................................................................3

*Dillaplain v. Xenia Cmty. Sch. Bd. of Ed.*, 2013 WL 5724512 (S.D. Ohio 2013)...26

*Foman v. Davis*, 371 U.S. 178 (1962).........................................................................30

*Garcetti v. Ceballos*, 547 U.S. 410 (2006)..............................................................2, 6

*Gordon v. Warren Consol. Bd. of Educ.*, 706 F.2d 778 (6th Cir. 1983)...................21

*Haynes v. City of Circleville*, 474 F.3d 357 (6th Cir. 2008).......................................3

*Hernden v. Chippewa Valley Sch. Dist.*, 2025 WL 2652993 (E.D. Mich. 2015)... 21, 22

*Heyerman v. Cnty. of Calhoun*, 680 F.3d 642 (6th Cir. 2012) .................................29

*Hopkins v. Duncan Twp.*, 812 N.W.2d 27 (Mich. Ct. App. 2011) ...........................12

*Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468 (2022) .................... 23, 24, 25, 26

*Howell Educ. Ass'n. MEA/NEA v. Howell Bd. of Educ.*, 789 N.W.2d 495 (Mich. Ct. App. 2010) ....................12

*Kesterson v. Kent State Univ.*, 967 F.3d 519 (6th Cir. 2020) ....................22

*Laird v. Tatum*, 408 U.S. 1 (1972) .................... 18, 19, 20, 21

*Lane v. Franks*, 573 U.S. 228 (2014) ....................7

*McGlone v. Bell*, 681 F.3d 718 (6th Cir. 2012) ....................1

*Mich. Open Carry, Inc. v. Clio Area Sch. Dist.*, 897 N.W.2d 748 (Mich. Ct. App. 2016) ....................29

*Mills v. State of Ala.*, 384 U.S. 214 (1966) ....................16

*MLive Media Grp. v. City of Grand Rapids*, 909 N.W.2d 282 (Mich. Ct. App. 2017) ....................9

*Monell v. Dep't. of Soc. Serv. of City of New York*, 436 U.S. 658 (1978) ....................29

*Novak v. City of Parma*, 932 F.3d 421, 433 (6th Cir. 2019) ....................28

*People v. Heath*, 2013 WL 4436862 (Mich. Ct. App. 2013). ....................16

*Pickering* v. *Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty.*, 391 U.S. 563 (1968) ....................6

*Suarez Corp. Indus. v. McGraw*, 202 F.3d 676 (4th Cir. 2000) ....................26

*Swickard v. Wayne Cnty. Med. Exam'r*, 475 N.W.2d 304 (Mich. 1991) ....................9

*Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) ....................22

*Weisbarth v. Geauga Park Dist.*, 499 F.3d 538 (6th Cir. 2007) .................... 3, 4, 17

*Whiting v. City of Athens*, 699 F.Supp.3d 652 (E.D. Tenn. 2023) ....................2

*Williams v. Addison Cmty. Sch.*, 2025 WL 4477505 (E.D. Mich. 2025) ....................25

**Statutes**

M.C.L. § 15.231(2) ....................8

M.C.L. § 15.232(h)(iv) ....................15

M.C.L. § 15.243 ....................9

M.C.L. § 15.243(1)(b) ....................9
M.C.L. § 15.243(1)(b)(i) ....................15
M.C.L. § 15.243(1)(v) ....................13
M.C.L. §§ 15.261-75 ....................9
M.C.L. § 15.268(1)(f) ....................9, 10
M.C.L. § 15.268(1)(k) ....................10
M.C.L. §§ 169.201-282 ....................5
M.C.L. § 169.257(1) ....................5
M.C.L. § 380.1-1853 ....................10
M.C.L. § 380.11a(3)(b) ....................29
M.C.L. § 380.471a ....................13
M.C.L. § 380.653(a) ....................14
M.C.L. § 380.653(d) ....................14
M.C.L. § 380.653(f) ....................14
M.C.L. § 380.1136(7) ....................10
M.C.L. § 380.1308b(8) ....................11

**Other Authorities**

Black's Law Dictionary, Abridged Ninth Edition ....................18

**Rules**

Bylaw 1001 ....................5

**Constitutional Provisions**

Const. 1963, art. 9, §23 ....................8

## I. STANDARDS FOR A MOTION TO DISMISS

> "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citations and quotations omitted). A motion to dismiss for failure to state a claim is disfavored, especially when one's civil rights are at stake. *Nuchols v. Berrong*, 141 Fed.Appx. 451, 453 (6th Cir. 2005) (unpublished); see *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976).

*McGlone v. Bell*, 681 F.3d 718, 728 (6th Cir. 2012).

> [T]he Court [in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007)] emphasized that even though a complaint need not contain 'detailed' factual allegations, its '[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'

*Assoc. of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

> The Federal Rules of Civil Procedure simply do not require any magic words or recitations to be made in a complaint: … The court's duty is to look to the facts and grant the necessary relief as justice requires—not to demand that certain citations or phrases are used.

*Knapp v. City of Columbus*, 93 Fed.Appx. 718, 720 (6th Cir. 2004).

"Thus, on a Rule 12(C) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer 'more than the mere possibility of misconduct.'" *Whiting v. City of Athens*, 699 F.Supp.3d 652, 658 (E.D. Tenn. 2023), citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## II. PLAINTIFF HAS MADE A PRIMA FACIE CASE FOR FIRST AMENDMENT RETALIATION.

Plaintiff has pled the necessary facts to show that she has suffered retaliation in violation of the First Amendment. To do so she needed to show (1) she was engaged in a constitutionally protected activity; (2) that the defendant's action caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of constitutional rights. *Boulton v. Swanson*, 795 F.3d 526, 530 (6th Cir. 2015). She has pled these elements. See the Complaint ¶¶ 86-89 (ECF No. 1-1, PageID. 18-19, as well as sufficient facts to support an objective claim (ECF No. 1-1, PageID. 8-11).

### A. Plaintiff engaged in a constitutionally protected activity. Her op-ed was the free speech activity of a private individual.

A threshold question in these inquiries regarding the application of free-speech protections is "did the employee speak as a 'citizen on a matter of public concern.'" *Boulton*, 795 F.3d at 531, citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). "The threshold inquiry, in turn, has two components: whether the employee was speaking as a citizen and whether the topic was a matter of public concern. *Connick v. Myers*, 461 U.S. 138 (1983)." *Id.* at 531-2.

#### 1. Plaintiff spoke as a citizen and not as a public official.

"Whether an employee speaks 'as a citizen' is a question of law for the Court." *Aquilina v. Wrigglesworth*, 298 F.Supp.3d 1110, 1115 (W.D. Mich. 2018). "In making the determination, the Sixth Circuit looks to the content, audience, setting, and impetus for the employee's speech. See *Weisbarth* [*v. Geauga Park Dist*., 499 F.3d 538, 545–46 (6th Cir. 2007)]; see also *Haynes v. City of Circleville*, 474 F.3d 357, 362 (6th Cir. 2008)." *Id*.

First, it must be noted that Plaintiff was censured for violating Bylaw 1001 where it says "Board members will take no ***private action***…" (ECF No. 1-1, PageID. 41) (emphasis added). The fact that she was punished for this is a recognition that her op-ed was a private action. This alone should decide the matter.

Defendants cite *Aquilina v Wriggelsworth*, supra, and *Aquilina v. Wrigglesworth*, 759 Fed.Appx. 340 (6th Cir. 2018) for the private-action standard and urge this Court to find a similar result. (ECF No. 16, PageID. 221-3). Plaintiff agrees on the standard but notes that there are important differences between that situation and this one. Given these factual differences, a correct application of the standard favors Plaintiff.

In *Aquilina* the issue was a Michigan circuit court judge who released video footage of an apparent crime that took place in the courthouse—a custodial defendant assaulted a prosecutor with a smuggled shank. *Aquilina*, 298 F.Supp. 3d at 1112. Judge Aquilina shared the video footage of the assault with a member of

the press. The defendants in that case were the county sheriff and deputy sheriff who sought a warrant against Judge Aquilina for criminal charges for the video's release. *Id*. Ultimately, no charges were brought. *Id*. at 1113. Judge Aquilina brought an unsuccessful challenge for First Amendment retaliation against the sheriff and deputy alleging that the warrant was retaliation for exercising her First Amendment rights and that her damages were embarrassment and needing to recuse herself from certain cases. *Id*. at 1113-4. The *Aquilina* court stated, "To determine whether [plaintiff] spoke as a citizen, we applied four factors: '[1] the impetus for her speech, [2] the setting of her speech, [3] the speech's audience, and [4] its general subject matter.'" *Aquilina*, 759 Fed.Appx. at 344, citing *Weisbarth v. Georgia Park Dist*., 499 F.3d 538, 546 (6th Cir. 2007).

In evaluating the first factor—the impetus for her speech—the courts look to whether the speech was made as part of her official duties. *Weisbarth*, 499 F.3d at 543-4 and *Aquilina*, 759 Fed.Appx. at 344. Plaintiff's duties as a school board member are set forth in the subject Bylaws. Per the Bylaws her duties are:

> Board members are elected to serve the interests of the School District and the entire school community. These interests may not be subordinated to any partisan principle, group, or interest. Board members are expected to be and remain informed about issues that may come before the Board for decision. Regular attendance at Board meetings is necessary to fulfill the obligations of a Board member.

Bylaw 1001 (ECF No. 16-2, PageID. 248).

These duties do not include writing op-eds nor do these duties include interacting with the public regarding proposed millage increases. She did this fully on her own. In fact, the Bylaws show that, as part of her official duties, when she acts on her own as a private citizen, she cannot represent the Board. "The Board acts as a whole, and only at properly convened Board meetings. An individual Board member lacks independent authority and ***may not act for or on behalf of the Board unless they have been specifically delegated authority by the Board to act in a particular instance***." *Id*. (emphasis added). Op-ed writing and opposing a new millage was not delegated to her.

Furthermore, per Michigan's Campaign Finance Act, M.C.L. §§ 169.201-82, Plaintiff could not act "as a person acting for a public body" using public resources to advocate for or against a local ballot question. M.C.L. § 169.257(1). She could only advocate if she was "not acting for a public body but is on the public official's or employee's personal time, [and] is expressing the public official's or employee's personal views, …" M.C.L. § 169.257(1)(f). She clearly advocated in opposition to the millage in her op-ed: "The truth is, Oakland County taxpayers already do more than their fair share to support Michigan's schools. Adding another countywide property tax for general operations isn't fiscal stewardship — it's mission creep. The proposed 'enhancement millage' is a tax increase without a clear justification or plan." (Complaint, Exhibit C, ECF No. 1-1, PageID. 40). This statute helps to

clarify the distinction between Plaintiff acting as a board member and Plaintiff acting as a private citizen. Both Michigan's statutory law and the subject Bylaw make it clear that she was acting on her own behalf on her own time.

Plaintiff signed the op-ed in her own name, and nowhere within did she claim to be speaking as a board member. (ECF No.1-1, PageID.38-40). In the op-ed text and at the very end, it does reference that she is a board member (or trustee), but it does not say that she is speaking in that capacity. This information provides context for her knowledge on the matter, "*Carol Beth Litkouhi is a trustee on the Rochester Community Schools Board of Education*." (ECF No.1-1, Page ID. 40) (italicization in original). The fact that a public official or employee speaks on a public matter and references their public position does not convert the speech into one made as a public official—the fact that the public speech is related to one's position is not dispositive. *Garcetti*, 547 U.S. at 421.

> The First Amendment protects some expressions related to the speaker's job. See, *e.g.*, *ibid*.; *Givhan* [*v. Western Line Consol. School Dist.*, 439 U.S. 410, 414 (1979)]. As the Court noted in *Pickering* [v. *Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty*., 391 U.S. 563 (1968)]: "Teachers are, as a class, the members of a community most likely to have informed and definite opinions as to how funds allotted to the operation of the schools should be spent. Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal." 391 U.S., at 572, 88 S.Ct. 1731. The same is true of many other categories of public employees.

*Id*.

Defendants allege that because Plaintiff acquired information from her position, that this means that she was acting as a public official. (ECF No. 16, PageID. 223). However, this is not the law. "[T]he mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." *Aquilina*, 759 Fed.Appx. at 344, citing *Lane v. Franks*, 573 U.S. 228, 240 (2014). Defendants also allege that Plaintiff only had the subject information because of her position and therefore "that is conduct of an office." (ECF No. 16, PageID. 223). The subject information that she used and referenced, however, was information that was publicly available, which is explained in this section.

The Defendants' use of "confidential" has no legal meaning here and cannot require that the information be withheld from the public. "[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Throughout Defendants' brief, Defendants claim that Plaintiff shared "confidential" information and this negates Plaintiff's claims. Yet nowhere do they cite what qualifies *any* information as confidential for the purposes of the Bylaw or this lawsuit. Defendants simply reach a legal conclusion about what constitutes confidential information and proceed to use the term to do a great deal of heavy lifting that it cannot sustain.

This is the gravamen of several Plaintiff's counts and was addressed in her 12(C) Brief (ECF No. 15, PageID. 172), particularly the portions on overbreadth and vagueness (ECF No. 15, PageID. 193-6), the portions relating to violations of Michigan's public policy (ECF No. 15, PageID. 197-9), and the portions on the Bylaw exceeding the authority granted to school districts (ECF No. 15, PageID. 200-1). But as the "confidentiality" issue goes directly to the issues raised in Defendant's Brief regarding whether she shared public information or information only available to Plaintiff as a public official, she will address this in additional depth here.

As a general matter, almost all information produced or used by public bodies in Michigan are subject to disclosure with a few enumerated exceptions. Per the Constitution, this is true of all financial records and reports. Const. 1963, art. 9, §23. (Plaintiff's Brief, ECF No. 15, PageID. 197). And Michigan has a thoroughly pro-disclosure statute in its Freedom of Information Act (FOIA). FOIA states:

> It is the public policy of this state that ***all persons,*** except those persons incarcerated in state or local correctional facilities, ***are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees***, consistent with this act. The people shall be informed so that they may participate in the democratic process.

M.C.L. § 15.231(2) (emphasis added).

FOIA lists certain information that is exempt from disclosure. These are generally found in M.C.L. § 15.243. These are too numerous to list here, but Defendants have not claimed any exemption. The only portion of FOIA that exempts

"confidential" information is related to law enforcement and "confidential source[s]" collected during law enforcement investigations. M.C.L. § 15.243(1)(b). It is the public body that has the burden of proof in applying an exemption. *MLive Media Grp. v. City of Grand Rapids*, 909 N.W.2d 282, 287 (Mich. Ct. App. 2017). As FOIA is a pro-disclosure statute, "exemptions to disclosure are to be narrowly construed." *Swickard v. Wayne Cnty. Med. Exam'r*, 475 N.W.2d 304, 307 (Mich. 1991). Plaintiff acknowledges that this case is not specifically a FOIA matter, but Michigan law, not district bylaws, determines the parameters of what a public body can withhold from the public.

Similarly, the Open Meetings Act, M.C.L. §§ 15.261-75, not district bylaws, determines what can be done confidentially and what must be done in public. "All meetings of a public body must be open to the public and must be held in a place available to the general public." M.C.L. § 15.263(1). "All decisions of a public body must be made at a meeting open to the public." M.C.L. § 15.263(2). The only "confidential" exceptions to the Open Meetings Act are for the review of position applicants' applications if the applicant requests that it be held confidential, M.C.L. § 15.268(1)(f), and—specific to schools—for security planning to address "existing" or "potential" threats, M.C.L. § 15.268(1)(k). Again, while this is not specifically a complaint for an Open Meetings Act violation, it is the statutory law and not bylaws that define what information can be withheld from the public.

Likewise, the Revised School Code, M.C.L. §§ 380.1-1853, defines what information districts must maintain as "confidential." In this Code, it is student private information including such things as a student's home address that is designated "confidential." M.C.L. § 380.1136(7).

The Bylaw here does not specify what constitutes "confidential information." It merely says, "Confidentiality[.] Board members will receive information that is not available to the general public." And "will not share any document or information that has not already been shared by the District." (ECF No. 16-2, PageID. 249). But given the law above, a board member is justified in not giving force and effect to the Superintendent's wish for this to remain confidential. Indeed, to allow such ad hoc declarations of non-disclosable information is not an authority given to the superintendent or the school board. So long as the information is available to the general public, the superintendent and school board's wishes are irrelevant.

The portion of the Bylaw preventing board members from disclosing "confidential" information, as a matter of law, only applies to the review of candidate's information if the candidate so requests it, per the Open Meetings Act at M.C.L. § 15.268(1)(f) supra, the confidential students' information such as addresses in the Revised School Code at M.C.L. § 380.1136(7) supra, and the Revised School Code's "emergency operations plan" in the Revised School Code at M.C.L. §

380.1308b(8) supra. These statutes are the only confidential information allowed to school districts and none of these apply here.

A board member would rightly conclude that the portion of the Bylaw applying to "confidential information" meant these specific items. Anything more is undefined and goes to Plaintiff's arguments about vagueness and overbreadth. If the statutes pertaining to school districts provide these specific instances of "confidential" information, then Plaintiff has every right to share other information, particularly when it is publicly available. And ad hoc "confidential" creations by the board or superintendent are so vague that an objective observer does not know what is prohibited and a near infinite amount of information could be prohibited by the district. This violates free-speech rights and is both vague and overboard. The District is not empowered to enlarge the scope of confidential information beyond what the statutes allow. Defendants do not cite any authority for them to do so except for the broad language of the Revised School Code allowing them to make rules governing the board. They cite no authority that this broad language allows them to restrict the scope of disclosable information when the law in this area is so thoroughly regulated by the Acts discussed.

The materials referenced by Plaintiff in her Exhibit B, (ECF No.1-1, PageID. 23-37) is clearly a written record and is subject to FOIA. Defendants have not made

any claim to the contrary. Therefore, any sharing of that information with the public cannot be restricted by the Bylaw, as it is already available to the public under FOIA.

FOIA does not apply to oral communications, but if any oral communications were reduced to writings or recorded, then these would be subject to FOIA as well. Internal communications regarding the operation of the public body are subject to disclosure under FOIA if they are made in furtherance of the government function. *Howell Educ. Ass'n. MEA/NEA v. Howell Bd. of Educ.*, 789 N.W.2d 495, 500-1 (Mich. Ct. App. 2010). Even communications made on a government official's private social media account can require public disclosure if these involve public business and are "owned, used, in the possession of, or retained" by the government office. *Blackwell v. City of Livonia*, 984 N.W.2d 780, 786-8 (2021). Similarly, a public official's handwritten notes are subject to FOIA if these are used "in furtherance of an official function." *Hopkins v. Duncan Twp*., 812 N.W.2d 27, 36 (2011). Again, this is not a FOIA matter, but statutory law defines the parameters of what can be considered confidential and what is available to the public. It is the *kind* of information that would be required to be disclosure by a public body.[1]

[1] There may be other written communications subject to FOIA pertaining to the millage increase. The Superintendent's obtaining of the package attached as Plaintiff's Complaint Exhibit B (ECF No. 1-1, PageID. 23-37) presumably was not conjured out of thin air and was the result of communications with other public officials of which there is a public record. But discovery has not commenced and is stayed pending the resolution of the parties' cross motions. Nor can Plaintiff use FOIA for such documents after the initiation of this case. FOIA, M.C.L. §

Furthermore, plaintiff could have emailed a summary of the discussion with the superintendent to another public official, and this would have been required to be disclosed under FOIA.[2]

Lastly, Plaintiff pled that at least one other school district had publicly disclosed and openly discussed the proposed millage increase before her op-ed was published, making it impossible for Defendants to claim that the proposal was not public knowledge. (Complaint ¶ 27, ECF No. 1-1, PageID. 10).

This discussion is not only important in determining the parameters of confidentiality and disclosure, but is important when determining whether Plaintiff's conduct was made as a private citizen exercising her free-speech rights, or whether the publication of her op-ed was done in her official capacity—as will be discussed in a subsequent section.

The nature of the Superintendent-Board relationship is relevant as well. By law, the Superintendent is an employee and officer of the Board and is appointed by the Board. Revised School Code, M.C.L. § 380.471a. The function of a superintendent is to, *inter alia*, "Put into practice the educational policies of the state

---

15.243(1)(v), exempts "Records or information relating to a civil action in which the requesting party and the public body are parties." Therefore, if this matter is dispositive, that would justify denying Defendants' motion to dismiss and proceeding to discovery.

[2] Plaintiff has not pled that she sent any such email, but she should not have to use such work arounds to inform the citizens of the doings of their government.

and the intermediate school board." M.C.L. § 380.653(a). "Supervise and direct the work of assistants and other employees of the intermediate school board." M.C.L. § 380.653(d). And "perform duties the state board and the intermediate school board prescribe, …" M.C.L. § 380.653(f). Under the subject Bylaws, the Superintendent has the authority "to advise the Board, implement Board policy, and administer the School District." Bylaw 1001 (ECF No. 16-2, PageID. 249).

Nothing in the Revised School Code or the Bylaws gives the superintendent power to declare information "confidential" on his mere say so. Yet throughout Defendants' brief it is taken for granted that his determination bound Plaintiff. Further, as far as employee control, it is the Board that controls the Superintendent and not the other way around.

In *Aquilina*, the judge showed a video recording of an assault on an assistant prosecutor to a reporter and allowed the reporter to record the footage on his phone. *Aquilina*, 759 Fed.Appx. at 341. The reporter contacted the sheriff and told him he had the video and asked the sheriff if he planned to release it, but the reporter did not tell him how it was obtained. *Id*. This caused the sheriff's office to open an investigation into criminal charges of obstruction of justice as the video was evidence in an ongoing investigation. *Id*. at 342. This investigation led them to Judge Aquilina. No charges were ever filed against the judge. *Id*.

The video in *Aquilina* was not like the public information here. The video was not a public record that must be disclosed under FOIA for several reasons. First, under Michigan law, the courts are not subject to FOIA and are excluded from the definition of "public body" by the explicit language of FOIA. "[T]he judiciary, including the office of the county clerk and its employees when acting in the capacity of clerk to the circuit court, is not included in the definition of public body." M.C.L. § 15.232(h)(iv). Therefore, court records are not public records open to anyone. Additionally, assuming that the video was subject to FOIA because it was in the possession of the county, FOIA exempts records involved in law enforcement proceedings. M.C.L. § 15.243(1)(b)(i). The fact that in *Aquilina* the sheriff opened an investigation into "obstruction of justice," *Aquilina*, 559 Fed. Appx. at 342, shows that the release would likely be exempt from disclosure under FOIA as interfering with law enforcement proceedings because obstructing justice is a subset of interference. "Interference with the administration of justice has been broadly construed to go beyond acts constituting obstruction of justice…" *People v. Heath*, 2013 WL 4436862, at *3 (Mich. Ct. App. 2013).

In evaluating whether Judge Aquilina was acting in her personal capacity or official capacity, the trial court there held that "Plaintiff's release of the video falls within the scope of her official responsibilities, and is not speech 'as a citizen.' Plaintiff had access to the video ***only*** by virtue of her official position." *Aguilina*,

298 F.Supp.3d at 1115 (emphasis added). This was not true here as the information was public and already discussed in at least one other school district. It was not available only by virtue of her position.

**2. Plaintiff spoke on a matter of public concern.**

Plaintiff's op-ed, on its face, discusses a proposed millage increase. Plaintiff discusses several matters directly associated with the millage and its effects, such as what the Supreme Court in *Janus v. AFSCME Council 31*, 585 U.S. 878, 912 (2018) characterized as "wage and tax increases…tax systems…how public money is spent…education" and were obvious matters of public concern. "[T]o suggest that speech on such matters is not of great public concern—or that it is not directed at the 'public square,'—[] is to deny reality." *Id*.

"[Plaintiff] has a right to engage in speech involving 'governmental affairs' and 'the manner in which government is operated or should be operated, and all such matters relating to political processes' under *Mills v. State of Ala.*, 384 U.S. 214, 218–19 (1966)." *Berry v. Schmitt*, 688 F.3d 290, 302 (6th Cir. 2012).

**B. The setting of Plaintiff's speech was a public forum.**

Having established that she spoke as a private person on a matter of public importance, the next *Weisbarth* factor is "the setting of her speech." *Aquilina*, 759 Fed.Appx. at 344. The previous discussion regarding the source of the information goes to this point as well. *Id*. It is worth noting, however, that the setting was an

opinion article in a newspaper with widespread circulation—The Detroit News. (Exhibit C, ECF No. 1-1, PageID.38-40). It was identified as her opinion. *Id*. This clearly shows that the speech was directed to the general public on a matter of public importance. This was not some internal memorandum or similar communication between public officials.

**C. Plaintiff's audience was the general public.**

The third *Weisbarth* factor is "the speech's audience." *Aquilina*, 759 Fed.Appx. at 344. For the reasons discussed with the previous factor, it is clear that the speech was intended for the general public, not other public officials or employees.

**D. Plaintiff's speech's subject matter was related to public finance.**

The fourth *Weisbarth* factor is the "general subject matter." This was discussed above when evaluating whether Plaintiff was speaking as a private person or as an elected official. Plaintiff was not speaking pursuant to her duties as a board member. As discussed above, her duties do not include op-ed writing, she is not a spokesperson for the board, and she has no authority to act on her own for the board. Taxation and school finances are matters of public concern. *Janus*, supra.

**E. Plaintiff has suffered an injury and her claim is not subjective.**

Plaintiff pled that she has suffered an objective chilling injury. Black's Law Dictionary, Abridged Ninth Edition, at 924, defines "objective" in the following

manner: "(1) Of, related to, or based on externally verified phenomena, as opposed to an individual's perceptions, feelings, or intentions." It defines subjective as "(1) Based on an individual's perceptions, feelings, or intentions, as opposed to externally verified phenomena…" *Id.*, at 1226.

Defendants use a number of cases, most of them related to law enforcement, to allege that Plaintiff has failed to allege an objective injury. (ECF No. 16, PageID. 231-3). Defendants misinterpret these cases and their application here. In *Laird v. Tatum*, 408 U.S. 1 (1972), the plaintiffs pled that the U.S. Army's collection of intelligence related to domestic unrest in the aftermath of the 1967 Detroit riots had a 'chilling effect' on the plaintiffs. *Id*. at 3-6. The *Laird* court held that the mere existence of surveillance could only produce a subjective chilling effect, as the plaintiffs did not allege any specific harms or any specific action taken against them. Their complaint met the definition of "subjective" provided above: "Based on an individual's perceptions, feelings, or intentions, as opposed to externally verified phenomena." Black's, supra. The *Laird* court recognized that:

> In recent years this Court has found in a number of cases that constitutional violations may arise from the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights. E.g., *Baird v. State Bar of Arizona*, 401 U.S. 1 (1971); *Keyishian v. Board of Regents*, 385 U.S. 589 (1967); *Lamont v. Postmaster General*, 381 U.S. 301 (1965); *Baggett v. Bullitt*, 377 U.S. 360 (1964).

*Laird*, 408 U.S. at 11 (cleaned up).

In *Laird*, the knowledge of said surveillance was not enough to create an objective threat to the individual plaintiffs' First Amendment rights.

> In none of these [successful chilling] cases, however, did the chilling effect arise merely from the individual's knowledge that a governmental agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some other and additional action detrimental to that individual. Rather, in each of these cases, the challenged exercise of governmental power was regulatory, proscriptive, or compulsory in nature, and the complainant was either presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging.

*Id*. at 11.

The complained-of Bylaw is regulatory, proscriptive, and compulsory. Plaintiff does not allege that merely having bylaws is violative of free-speech rights. She has identified specific language that prohibits open communications on matters of public interest (Complaint ¶¶ *inter alia* 33, 34, 39, 40, 41, ECF No. 1-1, PageID 11-12) and has shown that it can and has been applied to her in a restrictive manner. (Complaint ¶¶ *inter alia* 22-25, ECF No. 1-1, PageID 10). These are all objective showings and are not based on her subjective perception of what could happen to a person subject to generic bylaws. The Bylaws exist and their plain language makes clear that their very function is to restrict communication—to chill speech that has not been already endorsed by a majority of the board. By instructing board members that they "will not share any document or information that has not already been shared by the District, including but not limited to confidential or privileged

information," supra, the Bylaw prohibits board members from sharing any information that has not been blessed by the board, regardless of whether that information is legally confidential or publicly available.

The *Laird* court further described why the allegations in that case were subjective:

> That alleged 'chilling' effect may perhaps be seen as arising from respondents' very perception of the system as inappropriate to the Army's role under our form of government, or as arising from respondents' beliefs that it is inherently dangerous for the military to be concerned with activities in the civilian sector, or as arising from respondents' less generalized yet speculative apprehensiveness that the Army may at some future date misuse the information in some way that would cause direct harm to respondents. Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm;
> ***
> Stripped to its essentials, what respondents appear to be seeking is a broad-scale investigation, conducted by themselves as private parties armed with the subpoena power of a federal district court and the power of cross-examination, to probe into the Army's intelligence-gathering activities, with the district court determining at the conclusion of that investigation the extent to which those activities may or may not be appropriate to the Army's mission.

*Id*. at 13-4.

For Plaintiff's allegations to be subjective and comparable to those in *Laird*, she would have had to hypothetically plead that bylaws without any specific provisions chilled her speech by their mere existence in the hope that proceeding to discovery produced something she could use. This is not the case here and is easily distinguishable.

Defendants rely on another law enforcement opinion, *Gordon v. Warren Consolidated Board of Education*, 706 F.2d 778 (6th Cir. 1983). *Gordon* involved the placement of undercover police officers in classrooms. *Id*. at 778-9. The plaintiffs in *Gordon* asserted that students' free speech was chilled by the placement of police officers, but the court held this to be a subjective chill. The *Gordon* court specifically noted, however, that there was no allegation of how the officers' mere presence caused any concrete harm—that plaintiffs there only argued that subjective perceptions might chill students' and teachers' expression. *Id*. at 780-1. "The vague general allegations that students and teachers were harmed when news of the covert operation spread through the community simply do not meet the 'causation' component of *Laird*. These allegations only constitute a 'subjective' chilling of the First Amendment rights." Here, Plaintiff has pled and shown that the language of the subject Bylaw prohibits specific and objective communications.

The same is true of *Hernden v. Chippewa Valley School District*, 2025 WL 2652993 (E.D. Mich. 2015), cited by Defendants. In *Hernden*, a parent who spoke out at school board meetings and had other communications with board members regarding COVID policy was reported to the Department of Justice by a board member. *Hernden* at *1-*3. No DOJ investigation was held and Hernden did not know of the reporting to the DOJ until a friend informed her at a later date. *Id*. The *Herden* court found her claim to be subjective: "[T]here is no evidence that Hernden

was ever subjected to a governmental investigation. Her claim is instead rooted in her fear of an investigation, … Hernden further admits that she is unaware of any action undertaken by the DOJ or if 'anything ever came of [the] email.'" *Id*. at *7. That does not compare to this case where substantive action was taken that harmed Plaintiff in the form of a censure with the removal of Plaintiff from committee assignments and liaison roles.

Defendants also argue that their reprisal does not have a chilling effect that would deter a person of ordinary firmness because Plaintiff was not chilled. (ECF No. 16, PageID. 231-3). In doing so, Defendants ignore the relevant legal standard which focuses on whether a person of ***ordinary firmness*** would be chilled. "Defendants further argue that Bell cannot prove that their actions were sufficient to deter protected conduct, given that Bell himself was not deterred from persisting in this lawsuit. *Thaddeus–X* makes clear, however, that the adverseness inquiry is an objective one, and does not depend upon how the particular plaintiff reacted." *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002), citing *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). "On the record so far, these are questions best answered by a jury…" *Kesterson v. Kent State Univ*., 967 F.3d 519, 525 (6th Cir. 2020). Further, a plaintiff's subsequent undeterred speech "is not dispositive." *Id*. at 526. The standard is not one that denies relief to those who continue to speak out despite an

attempted chill—it is one that makes the chilling of ordinary people an actionable constitutional tort.

### F. **Defendants misstate the law by saying that a censure accompanied by removal from committee assignments is mere speech and is not a prohibited retaliatory action**.

Defendants cite several cases for the claim that censure is always just the free speech of the censuring entity and is therefore not actionable. The cases they cite, however, make clear that when additional retaliatory actions exist, such as removal from committee assignments, these can violate First Amendment rights. The most relevant case is our Supreme Court in *Houston Community College System v. Wilson*, 595 U.S. 468 (2022) which addressed a similar situation with a board member censured who was also denied internal board officer positions. In *Wilson*, however, the plaintiff failed to properly bring that part of his claim relating to the denial of officer positions and the Court refused to consider it—the case was explicitly only about the "purely verbal censure." The opinion uses the phrase "purely verbal censure" four times to describe that matter. *Id*. at 473, 474, 475, and 477. Defendants' Brief misleads the Court in stating that Wilson received additional penalties beyond verbal, but failed to include the fact that the court there neither considered or decided that question. (ECF No. 16, PageID. 227). The *Wilson* Court specifically disclaimed the question of whether additional penalties made the censure a First Amendment violation. "In rejecting Mr. Wilson's claim, we do not

mean to suggest that verbal reprimands or censures can never give rise to a First Amendment retaliation claim. It may be, for example, that government officials who reprimand or censure students, employees, or licensees may in some circumstances materially impair First Amendment freedoms." *Id*. at 479-80. "[W]e do not address today questions concerning legislative censures accompanied by punishments, or those aimed at private individuals." *Id*. at 480. "Our case is a narrow one. It involves a censure of one member of an elected body by other members of the same body. It does not involve expulsion, exclusion, or any other form of punishment." *Id*. at 482.

*Wilson* points out that a "purely verbal censure" is itself protected speech by a board, and that elected officials ought to have thick skin against criticism by their peers. "In this country, we expect elected representatives to shoulder a degree of criticism about their public service from their constituents and their peers—and to continue exercising their free speech rights when the criticism comes." *Id*. at 478. Yet that was not the end of the Court's analysis. The *Wilson* Court distinguished the purely verbal reprimand at issue there from *Bond v. Floyd*, 385 U.S. 116 (1966) where a state legislature refused to seat a member who had been critical of the Vietnam War. "The legislature's action in *Bond* implicated not only the speech of an elected official, ***it also implicated the franchise of his constituents***. And it involved not just counterspeech from colleagues but ***exclusion from office***." *Wilson*, 595 U.S. at 481 (emphasis added).

In this matter, the censure limited Plaintiff's participation in internal board governance by removing her from assignments, committees, and liaison roles. If she and only she is denied these positions, then she has been reduced in her capacity to act on the board in a way that none of her other colleagues are. Only board committees "gather information for the Board" under the Bylaws. (Bylaws, ECF No. 16-2, PageID. 249). This is a diminution of her ability to represent her constituents and is closer to the *Bond* matter than the *Wilson* matter. Discovery may show that, in practice, the committees exercise other functions denied to her, and that she alone among the board members is deprived of these duties. This would show a clear non-verbal penalty. Defendants' own citation to OMA in footnote 3 of their brief shows that only committee members can "study issues and make recommendations to the full Board." (ECF No. 16, PageID. 227-8). This ability is denied to Plaintiff, and therefore to her constituents.

Defendants' other cases fare no better. *Williams v. Addison Community Schools*, 2025 WL 4477505 (E.D. Mich. 2025) saw a board member in Michigan removed as president of the board. Among his transgressions was making improper requests for confidential student information. *Id*. at *2.[3] Williams claimed that denial of the board presidency was the injury, but the court held that he had no right

[3] Note that this was legally-sanctioned confidential information—unlike here where Defendants merely allege that public information is confidential on an employee's say-so.

to that office and so suffered no injury. *Id*. at *3. This is not like Plaintiff's matter here where she is not complaining of being barred from internal offices she is not entitled to as a matter of right, but being barred from participating in the board business in ways every other board member can and does.

Defendants' use of *Suarez Corporation Industries v. McGraw*, 202 F.3d 676 (4th Cir. 2000) is likewise distinguishable. *Suarez*, like *Wilson*, did not deal with a censure that was more than a verbal reprimand, and yet specifically stated that additional penalties could make a censure First Amendment retaliation. "Thus, where a public official's alleged retaliation is in the nature of speech, ***in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action*** will imminently follow, such speech does not adversely affect a citizen's First Amendment rights." *Id*. at 687 (emphasis added). The censure here included sanction and regulatory action affecting her ability to participate and represent her constituents. The same is true of Defendants' citation to *Dillaplain v. Xenia Community Schools Board of Education*, 2013 WL 5724512 (S.D. Ohio 2013). There was no penalty beyond a verbal reprimand. *Id*. at *2. This same distinction applies to the other opinions cited by Defendants from other jurisdictions.

G. **Plaintiff has properly pled that she suffered retaliation for her exercise of free speech**.

"Determining whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry that focuses on the status

of the speaker, the status of the retaliator, the relationship between the speaker and retaliator, and the nature of the retaliatory acts." *Suarez*, 202 F.3d at 686. Plaintiff has pled that Defendants' decision to censure her and remove her from committees and liaison roles was the direct result of her publishing an op-ed opposing the millage that the Superintendent wished to keep from the public at the time. As previously discussed, the attached Censure is explicit that the op-ed, not any action she took in her official capacity as a board member, was the basis for the punishment. (ECF No. 1-1, PageID.41). To prevail on a First Amendment retaliation case a plaintiff need only show that the adverse action was "motivated at least in part" by the speech. *Kesterton*, 967 F.3d at 525. Further, the Board's Censure is clear that it was in opposition to the policy position she took, claiming that the op-ed was "potentially fiscally harmful to the district and other Oakland County school districts…." (ECF No. 1-1, PageID. 41). This supports a claim for relief that is plausible on its face.

## III. PLAINTIFF HAS PLED SUFFICIENT FACTS TO SUSTAIN AND PREVAIL ON CLAIMS OF CONSTITUTIONAL VIOLATIONS BY THE BYLAW.

Defendants claim that Plaintiff's constitutional claims fail as matters of law. (ECF No. 16, PageID. 235-40). Plaintiff has briefed these claims and hereby incorporates her cross-motion brief showing that she has properly and sufficiently pled constitutional violations. (Plaintiff's 12(C) Brief, ECF No. 15, PageID. 181-

96). However, Plaintiff will address additional matters and opinions cited by Defendants.

Defendants argue that to be a prior restraint there must be a legal impediment and that the Censure is not enough. (ECF No. 16, PageID. 236-7). *Alexander v. United States*, 509 U.S. 544, 550-1 (1993) "held that a prior restraint must raise a 'legal impediment' to speech and described the 'classic examples of prior restraints' as temporary restraining orders, permanent injunctions, and court orders." *Novak v. City of Parma*, 932 F.3d 421, 433 (6th Cir. 2019). "But the formality of these classic cases should be a sufficient condition for prior restraint, not a necessary one." *Id*.

> A government official should not have to declare his order official or jump through certain procedural hoops to create a prior restraint. Such a rule would allow government officials to cloak unconstitutional restraints on speech under the cover of informality. To borrow a concept, when an officer "carr[ies] a badge of authority of the government and represent[s] it in some capacity," *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 632 (1991) (O'Connor, J., dissenting), his order to a private party to take a specific action may fairly be called an "administrative order." This is true even if the order is not on its terms binding. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, (1963) (recognizing "a system of prior administrative restraints" even where affected parties were free to ignore the notices).

*Novak*, 932 F.3d at 433.

Defendants Claim that this court has already:

> [O]bserved that MCL 380.11a "plainly authorizes school boards to adopt bylaws," and that Michigan's courts read the statute to confer broad self-governance authority—including, in certain circumstances, the ability to invoke privilege doctrines over communications. (ECF

> No. 14, PageID.165-166 (citing *Mich. Open Carry, Inc. v. Clio Area Sch. Dist.*, 897 N.W.2d 748 (Mich. Ct. App. 2016)).

ECF No. 16, PageID. 243.

But this Court did not say that school boards could "invoke privilege doctrines over communications." The Court said school boards "might" be able to invoke privilege "in certain circumstances." ECF. No. 14, PageID. 165. That is different from Defendants' characterization. Further, Plaintiff argues that *Michigan Open Carry* stands for the proposition that school boards do not have broad authority when the area in question is heavily regulated by other statutes. Per *Michigan Open Carry*, schools have broad authority specifically given over safety, M.C.L. § 380.11a(3)(b). *Id*. at 755. And exercise of this authority was not precluded by other specific regulatory schemes. *Id*. at 756-8. Here, in contrast, Plaintiff has shown that there is a pervasive regulatory scheme directly on point controlling public information. See this brief above and her cross motion (ECF No. 15, PageID. 197-201).

## IV. BECAUSE PLAINTIFF HAS VALID CONSTITUTIONAL CLAIMS, *MONELL* APPLIES.

Defendants acknowledge that *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) applies where there is a valid constitutional claim but denies that Plaintiff has such claims. (ECF No. 16, PageID. 240-2). For the reasons set forth in this brief and Plaintiff's cross motion (ECF No. 15), Plaintiff has shown that she has such valid claims. Further, the Bylaw is clearly a "a custom,

policy, or practice attributable to the municipality [and] was the 'moving force' behind the violation of the plaintiff's constitutional rights." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012) (citation omitted).

Lastly, Defendants claim that Plaintiff's public policy claim is barred by governmental immunity because "to the extent Count IV seeks damages, it sounds in tort and is barred by governmental immunity." (ECF No. 16, PageID. 243). Plaintiff did not plead damages for Count IV—only injunctive and declaratory relief. (ECF No. 1-1, PageID. 19).

**CONCLUSION**

For the reasons stated above and in Plaintiff's cross-motion for Judgment on the Pleadings (ECF No. 15), Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss (ECF No. 16). Additionally, if this Court is inclined to grant Defendants' Motion, in whole or in part, Plaintiff requests that she be allowed to move to amend her Complaint.

> Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

Dated: August 15, 2026

/s/ Derk A. Wilcox
MACKINAC CENTER LEGAL FOUNDATION
*Attorneys for Plaintiff*